IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **KH-REIT II FUNDING XXII, LLC** | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | C.A. NO. 4:22-CV-03730 |
| **GRANT MEADOWS, L.L.C.** | § | |
| *Defendant*. | § | |
| | § | |

## **GRANT MEADOWS, L.L.C.'S ORIGINAL ANSWER & COUNTERCLAIM**

Defendant, GRANT MEADOWS, L.L.C., ("Grant Meadows" or "Defendant"), files the following answer to Plaintiff's Original Amended Complaint (the "Complaint") and its Original Counterclaim. Defendant responds to the numbered paragraphs in the Complaint with the following correspondingly numbered paragraphs:

### **Introductory Comment**

In addition to mischaracterizing the parties' obligations under the Sale Agreement, Plaintiff's Original Complaint regretfully mischaracterizes and alleges that its claims, at least in part, arise out of Grant Meadows' alleged "improper title objection". During the course of the contract period for this deal involving the purchase and sale of the better part of two city blocks in the Midtown area of Houston, Plaintiff represented and purported to authorize Grant Meadows to enter and make certain alterations to the property. Grant Meadows relied on Plaintiff's representations and written authorization that Plaintiff had the authority to permit CenterPoint to remove a power pole from the property, prior to closing. After signing an amendment to the Sale Agreement regarding the power pole, Defendant learned that a neighboring landowner disputed Plaintiff's ability to unilaterally alter the CenterPoint pole and threatened suit regarding the same.

When Grant Meadows learned of Plaintiff's misrepresentations, Grant Meadows

sought assurance from Plaintiff that Plaintiff would be able to perform all of its closing obligations—including presenting a sworn, owner's affidavit to the title company that there was no threatened litigation involving the Property. Plaintiff responded. And rather than cure or provide assurance that the neighboring landowner was mistaken, Plaintiff insisted that it was ready, willing, and able to close—and that it would not make any effort to resolve the dispute with the neighbor prior to closing.

When the title company learned of the dispute between Plaintiff and the neighboring landowner, the title company issued a revised title commitment, adding new coverage exceptions. Per the Sale Agreement, the revised commitment—with new exceptions—revived Grant Meadows' right to object to the same. Grant Meadows timely sent written notice of its objections—and Plaintiff refused to cure the objections and wrongly insisted, as it does in its Complaint, that the objections were invalid.

In short, the claims for relief asserted in Plaintiff's Original Complaint are without merit and, as a result, Defendant is entitled to the relief it respectfully seeks herein.

## I.  ANSWER

### RESPONSE TO "I. INTRODUCTION"

1. Defendant admits that Plaintiff and Defendant entered into a contract, together with amendments thereto, to purchase certain real property from Plaintiff. Defendant denies or lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 1.

### RESPONSE TO "II PARTIES"

2. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in Paragraph 2.

3. Defendant admits the allegation in Paragraph 3.

**RESPONSE TO "III JURISDICTION AND VENUE"**

4. Paragraph 4 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant admits that if Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware and its sole member Knighthead SSRE REIT II, Inc. is a Delaware corporation with its principal place of business in Connecticut, and that Plaintiff is a citizen of Delaware, there would be complete diversity of citizenship between Plaintiff and Defendant. Defendant admits that Plaintiff purports to bring a claim whose amount in controversy exceeds $75,000.00.

5. Paragraph 5 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant admits that it is a legal entity organized and existing under the laws of the State of Texas. Defendant, further, admits that venue is proper.

**RESPONSE TO "IV. FACTUAL BACKGROUND"**

6. Defendant admits that, effective March 31, 2022, Plaintiff entered into a sale agreement (as amended, the "Sale Agreement") to sell Defendant two tracts of real property located at 2701 and 2627 Main Street in the City of Houston, Texas as more particularly described in the Sale Agreement (the "Property"), with an original closing date of August 28, 2022. Defendant admits that the parties agreed to extend the closing date to October 28, 2022. Defendant denies or lacks knowledge or information sufficient to form a belief as to the truth of each of Plaintiff's remaining allegations in paragraph 6

7. Defendant admits that in an April 25, 2022 letter, the owner of a tract of land adjacent to the Property (the "Neighbor") asserted that Plaintiff has certain obligations with respect to the relocation of electrical facilities on the Property pursuant to an unrecorded purchase and sale agreement, dated June 16, 2017, between the Neighbor

and Plaintiff's predecessor-in-title, Caydon Houston Property 2 LP (the "Caydon Contract"). Defendant denies or lacks knowledge or information sufficient to form a belief as to the truth of each of Plaintiff's remaining allegations in paragraph 7.

8. Defendant admits that effective May 3, 2022, the parties entered into the first amendment to the Sale Agreement. Defendant admits that the First Amendment did provide Defendant certain limited rights to remove or relocate the power pole. Defendant denies or lacks knowledge or information sufficient to form a belief as to the truth of each of Plaintiff's remaining allegations in paragraph 8.

9. Defendant denies or lacks knowledge or information sufficient to form a belief as to the truth of each of Plaintiff's allegations in paragraph 9

10. Defendant admits that Fidelity National Title Insurance Company, on October 24, 2022, issued a revised title commitment containing a new exception relating to the power line pole and transmission lines. Defendant admits that it lodged "supplemental title objections". Defendant denies or lacks knowledge or information sufficient to form a belief as to the truth of each of Plaintiff's remaining allegations in paragraph 10.

11. Defendant denies or lacks knowledge or information sufficient to form a belief as to the truth of each of Plaintiff's allegations in paragraph 11.

**RESPONSE TO "V CAUSES OF ACTION"**

Defendant repeats and reiterates its responses and affirmative allegations paragraphs 1 through 11 as if fully set forth herein.

**A.    Breach of Contract**

12. Paragraph 12 contains an allegation to which no answer is required.

13. Defendant admits that Plaintiff and Defendant entered into a valid, binding, and enforceable Sale Agreement. Defendant denies or lacks knowledge or

information sufficient to form a belief as to the truth of each of Plaintiff's remaining allegations in paragraph 13.

    **B. Trespass**

    14.    Paragraph 14 contains an allegation to which no answer is required.

    15.    Defendant denies or lacks knowledge or information sufficient to form a belief as to the truth of each of Plaintiff's allegations in paragraph 15.

### RESPONSE TO "VI CONDITIONS PRECEDENT"

    16.    Pursuant to Federal Rule of Civil Procedure 9(c), Defendant denies that all conditions precedent have been performed or have occurred, including all conditions precedent to Plaintiff's right to recover as set forth herein. In particular, Defendant committed no breach of the Sale Agreement by terminating the Sale Agreement upon Plaintiff's failure to remove certain exceptions to the title policy, pursuant to Section 5(d) of the Sale Agreement. Further, Plaintiff knowing and willing waived any complaint regarding removal of the power line pole and/or transmission lines by its continued performance of its obligations under the Sale Agreement—even after learning the power line pole and/or transmission lines had been removed, Plaintiff insisted and represented to Defendant that Plaintiff was ready, willing, and able to close. In addition, Plaintiff made affirmative representations in the First Amendment to the Sale Agreement which were untrue at the time that they were made. Defendant relied on Plaintiff's representations. Based on the forgoing, Plaintiff cannot demonstrate that Defendant committed a material breach of the Sale Agreement and, therefore, Plaintiff is not entitled to recover from Defendant.

### II. LIMITED GENERAL DENIAL

    17.    Pursuant to Federal Rule of Civil Procedure 8(b), Defendant asserts a general

denial as to those allegations contained in the Complaint that are not clearly and specifically admitted herein.

### III.   DEFENSES

18. Plaintiff has failed to state a claim upon which relief can be granted.

19. Plaintiff has unclean hands.

20. Recovery from Defendant, if any, is barred to the extent Plaintiff failed to mitigate its damages.

21. Recovery from Defendant, if any, is barred by waiver.

22. Recovery from Defendant, if any, is barred by estoppel by contract.

23. Recovery from Defendant, if any, is barred by estoppel.

24. Recovery from Defendant, if any, is barred by laches.

25. Defendant gives notice that Defendant may rely upon other, applicable defenses of which it may become aware during discovery in this case and reserves the right to amend this answer to assert any such defenses.

### IV.   ORIGINAL COUNTERCLAIM

Comes now Grant Meadows, LLC ("Grant Meadows" or "Counter-Plaintiff"), who files this, its Original Counterclaim against KH-REIT II Funding XXII, LLC ("KH-REIT" or "Counter-Defendant") and, pursuant, to Federal Rule of Civil Procedure 13, for cause of action would respectfully show the Court, as follows:

### PARTIES

26. Grant Meadows is a Texas limited liability company, with its principal place of business in Harris County, Texas and has made its appearance in this suit through the undersigned counsel.

27. KH-REIT is a Delaware limited liability company, with its principal place of

business in Connecticut, and has made its appearance in this suit through undersigned counsel.

## JURISDICTION & VENUE

28. This Court has personal jurisdiction over KH-REIT because, among other reasons, KH-REIT has submitted to the jurisdiction of the Southern District of Texas, Houston Division, by bringing this lawsuit as Plaintiff. Further, by filing its claim in this Court, KH-REIT has waived any objections to venue regarding compulsory or permissive counterclaims.

## FACTUAL BACKGROUND

29. Effective March 31, 2022, KH-REIT entered into a Sale Agreement to sell to Grant Meadows land, improvements, intangible property, and all of KH-REIT's right, title, and interest in and to the Land ("Sale Agreement"), located in the City of Houston, Harris County, being more particularly described in Exhibit A hereto ("Property").

30. As consideration for the deal, Grant Meadows made an initial deposit of $150,000.00, within two business days after the Effective Date of the Sale Agreement. Not later than 90 days after the Effective Date, per the terms of the Sale Agreement, Grant Meadows deposited an additional $500,000.00. The first and second deposits, together, would be applied toward the purchase price and the deposits were non-refundable, except under the circumstances contemplated by the Sale Agreement.

31. The parties initially agreed that closing would occur 150 days following the Effective Date. But the parties later agreed to extend closing until October 28, 2022, or such earlier date agreed upon by the Parties.

32. As a material part of the consideration exchanged in support of the transaction, per Section 8 of the Sale Agreement, KH-REIT represented and warranted that

(1) "it has full power and authority to . . . perform its obligations hereunder and has taken all necessary action to authorize the execution and performance of [the Sale] Agreement and the consummation of the transactions contemplated" therein. KH-REIT also represented and warranted that "execution and performance of the [Sale Agreement] does not in any manner conflict with any other agreement to which [KH-REIT] is a party."

33. In further consideration of the Sale agreement, both parties agreed to certain closing obligations. KH-REIT agreed, among other things, to provide to Grant Meadows "an owner's title affidavit in customary form reasonably acceptable to Seller and Escrow Agent." The 'owner's title affidavit', which KH-REIT drafted, required KH-REIT to swear under oath that the following statements were true and correct:

> To my actual knowledge, with no duty of investigation or inquiry [KH-REIT] is not a party to any pending lawsuits in any State or Federal Court, and except for an alleged, untimely claim of mechanics' lien by Glumac that would have been extinguished by the foreclosure of [KH-REIT]'s deed of trust, as previously disclosed to the Title Company, I am not aware of any lawsuit which may be filed against [KH-REIT]; nor has [KH-REIT] been declared bankrupt or insolvent, voluntarily or involuntarily, in any court . . . . [and] To my actual knowledge, with no duty of investigation or inquiry, there are no unrecorded and/or outstanding leases, contracts, options or agreements affecting the Property.

34. The parties also agreed to the First Amendment to Sale Agreement, which, among other things, KH-REIT agreed that prior to closing Grant Meadows could at its sole cost and expense remove or relocate the power pole on the Property, with the cooperation of KH-REIT in doing so.

35. Shortly thereafter, and relying on the First Amendment, Grant Meadows called CenterPoint Energy and requested removal of the pole from the Property. For this type of work no such plans were needed—CenterPoint neither requires nor provides any plans as contemplated by the First Amendment. CenterPoint simply proceeded to remove the pole from the Property.

36. Thereafter, on June 27, 2022, neighboring property owner, Main 2601 Partners, LLC ("Neighbor"), sent written notice only to KH-REIT contending that neither KH-REIT "or any successor . . . has any right to relocate, move, or otherwise alter (or cause the relocation, movement, or alteration of) the power poles and/or other electrical facilities located on [KH-REIT's] property . . . ."

37. Neighbor also informed KH-REIT that it "intend[ed] to pursue and exercise its rights and remedies that [it] may have under any contracts and agreements, at law, in equity, or otherwise." Neighbor's allegations arise out of an unrecorded agreement, which the Neighbor contends was negotiated and agreed to by KH-REIT's predecessor in interest and binding on KH-REIT.

38. By October 11, 2022—when KH-REIT had taken no further action to resolve the issues with Neighbor—Grant Meadows sent written notice to KH-REIT and Fidelity National Title Insurance Company of Neighbor's letter and claims regarding (1) an unrecorded agreement or contract affecting the Property; (2) Neighbor's threatened litigation to enforce that agreement; and (3) Neighbor's threatened litigation regarding KH-REIT's authority, or lack thereof, to move the CenterPoint power pole on the Property. Based on these issues, Grant Meadows noted that it appeared that KH-REIT would not be able to perform its material obligations under the Sale Agreement.

39. Thus, Grant Meadows asked KH-REIT for written assurance that KH-REIT would honor its Sale Agreement obligations at closing.

40. Within a week, on October 18, 2022, KH-REIT responded. In its written response, KH-REIT claimed that it "**remains ready willing and able to perform and plans to close on October 28, 2022**." At the time KH-REIT penned this response, it knew that the CenterPoint pole had been removed from the Property.

41. On October 24, 2022, Fidelity National Title Company issued a revised commitment which added a new exception to Schedule B, Item 10. In response thereto, Grant Meadows timely served written notice of its objections to the newly added exception, as well as certain matters on Schedule C, which KH-REIT was required to remove per the Sale Agreement. The revised commitment also required an updated Survey.

42. KH-REIT responding to Grant Meadows' objections, rejected them, and refused to cure or address them objections.

43. Thereafter, on October 26, 2022, after KH-REIT refused to confirm its ability to perform all of its closing obligations and also refused to cure Grant Meadows' objections to the October 24, 2022, Revised Commitment, Grant Meadows exercised its rights to terminate the Sale Agreement.

## CAUSE OF ACTION – Breach of Contract

44. Counter-Plaintiff Grant Meadows incorporates by reference the preceding allegations of paragraphs 26-43 as if set out fully herein.

45. Grant Meadows, as buyer, and KH-REIT, as seller, were parties to the Sale Agreement, which was a valid, enforceable contract for the purchase and sale of the Property.

46. Grant Meadows fully performed all of its contractual obligations, including, but not limited to, payment of the Deposit. Alternatively, to the extent necessary, Grant Meadows is excused from performing its contractual obligations as a result of KH-REIT's material breach of the Sale Agreement.

47. At all times relevant, Grant Meadows was ready, willing, and able to perform its obligations under the Sale Agreement.

48. KH-REIT, without justification or excuse, failed and refused to perform its

obligations under the Sale Agreement, including but not limited to making false representations and warranties and inducing Grant Meadows to enter into the First and Second Amendments to Sale Agreement, when KH-REIT lacked the authority to perform its obligations. KH-REIT also represented and warranted that "execution and performance of the [Sale Agreement] does not in any manner conflict with any other agreement to which [KH-REIT] is a party"—but KH-REIT's Sale Agreement obligations conflict with other obligations KH-REIT owes to a neighboring landowner. Lastly, KH-REIT refused to permit the title company to release the Deposit to Grant Meadows.

49. All conditions precedent to Grant Meadows's performance of its obligations were satisfied or occurred before KH-REIT's breach.

50. KH-REIT's breach caused injury to Grant Meadows, resulting in direct damages, which are within the jurisdictional limits of this Court. Grant Meadows is entitled to recover, and therefore seeks recovery of its damages in the sum of $650,000.00, plus accrued interest, costs, and attorneys' fees.

**CAUSE OF ACTION – Suit for Declaratory Judgment**

51. Grant Meadows incorporates by reference the preceding allegations of paragraphs 26-43 as if set out fully herein.

52. Pleading in the alternative, but only to the extent necessary to protect its right and subject to and without waiving any claims, causes of action, defenses, factual allegations, or legal theories pleaded herein, an actual and substantial controversy exists regarding the parties' rights and responsibilities under the Sale Agreement.

53. Among other disputes, Grant Meadows and KH-REIT disagree as to Grant Meadows's available remedies under the Sale Agreement as well as the parties' respective duties and obligations under the Sale Agreement. And KH-REIT's execution and

performance of its Sale Agreement obligations conflicted with agreements by and between it and the neighboring landowner. Therefore, Grant Meadows seeks relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the Uniform Declaratory Judgments Act, Texas Civil Practice and Remedies Code § 37.001, *et seq*. Specifically Grant Meadows seeks an Order from this Court that:

   a. Grant Meadows committed no breach, or, alternatively, no material breach of the Sale Agreement;

   b. KH-REIT's delivery of the owner's affidavit of title was a material term of the Sale Agreement;

   c. KH-REIT anticipatorily breached the Sale Agreement by insisting upon closing without assurance of its ability to provide a truthful and accurate owner's affidavit of title, thereby entitling Grant Meadows to recover the $650,000.00 deposit pursuant to the terms of the Sale Agreement; and

   d. KH-REIT has no right to any of the remedies it seeks in this lawsuit and has no further rights under the Sale Agreement.

**DAMAGES & LIABILITY**

By asserting these claims, a. Grant Meadows is entitled to recover its costs and reasonable attorneys' fees that are equitable and just pursuant to 28 U.S.C. § 2202, Tex. Business and Commerce Code Section 27.01(c) and (e), and Sections 38.001 and 37.009 of the Texas Civil Practice & Remedies Code. Pursuant to Chapter 304 of the Texas Finance Code and the Texas common law, Grant Meadows is entitled to recover pre-judgment and post-judgment interest at the maximum statutory rate.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiff Grant Meadows prays that after a final trial on the merits the Court enter a judgment wherein (1) Plaintiff/Counter-Defendant KH-REIT take nothing on its claims and causes of action; and (2) Counter-Plaintiff Grant Meadows have and recover against Counter-Defendant, as

follows:

i. Render judgment awarding all actual damages caused by Counter-Defendant's breach of the Sale Agreement, in such amount as may be shown by the evidence;

ii. Alternatively, to the extent necessary, render declaratory judgment as set forth herein;

iii. Judgement for Counter-Plaintiff's attorneys' fees and costs of court;

iv. Prejudgment and post-judgment interest; and

v. All other and further relief to which Counter-Plaintiff may be entitled in law or equity, to which Counter-Plaintiff is justly entitled.

Respectfully submitted,

**WILSON CRIBBS & GOREN, P.C.**

By: _/s/Sara Prasatik_
    Sara M. Prasatik
    TBN 24088251
    Federal ID No.:3229840
    sprasatik@wcglaw.com
    Scot Clinton
    TBN 24045667
    Federal ID No.:569701
    sclinton@wcglaw.com
2500 Fannin Street
Houston, Texas 77002
Tel: 713-222-9000
Fax: 713-229-8824

**ATTORNEYS FOR DEFENDANT/**
**COUNTER-PLAINTIFF,**
**GRANT MEADOWS, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2022, a true and correct copy of the above and foregoing was filed on the CM/ECF system and served to all counsel of record via electronic notices, facsimile, and/or U.S. Postal Mail in compliance with the Federal Rules of Civil Procedure, as follows:

**Via E-Service**
Joshua Eames-Cepero
Hajjar Peters, LLP
3144 Bee Caves Road
Austin, Texas 78746
jeames@legalstrategy.com
**Attorneys for Plaintiff/Counter-Defendant**

Matthew Baumgartner
David King
Armbrust & Brown, PLLC
100 Congress Avenue, Ste. 1300
Austin, Texas 78701
mbaumgartner@abaustin.com
dking@abaustin.com
**Attorneys for Plaintiff/Counter-Defendant**

                                                 */s/Sara Prasatik*
                                                 Sara Prasatik