IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KH-REIT II FUNDING XXII, LLC., § | | |
|     *Plaintiff,* § | | |
| § | | |
| v. § | | Case No. 4:22-CV-3730 |
| § | | |
| GRANT MEADOWS, L.L.C. and § | | |
| SHAHIN JAMEA, § | | |
|     *Defendants.* § | | |

# PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL

TO THE HONORABLE KEITH P. ELLISON:

Plaintiff KH-REIT II Funding XXII, LLC ("Knighthead") files this Reply in Support of Knighthead's Motion to Compel and for Discovery sanctions (Dkt # 24) against Defendants Grant Meadows, L.L.C. and Shahin Jamea ("Defendants"), and would respectfully show the following:

## I. Defendants must be sanctioned.

Defendants' response fails to refute, or adequately explain why, Defendants have so completely failed to meet their discovery obligations. Importantly, Defendants do not contest that their initial production was insufficient. In their defense, they offer only tepid—and demonstrably false—explanations for their failure to produce discoverable information. And, as of the date of this Reply, they have still failed to correct *any* of their many discovery shortcomings.

First, it is not true that Defendants have "cooperated in discovery." Resp. at 5. Defendants boldly assert that in addition to producing emails, they produced "documents from its files"—i.e., documents from Defendants' hard drives. *Id.*

1

Defendants go on to explain that they have "reviewed all documents" in their "project related folders and files and produced all responsive documents." *Id.* at 6. These assertions are simply false. As shown by the uncontroverted declaration of Plaintiff's e-discovery consultant, Defendants have produced 969 documents, all of which consist of emails and their attachments. *See* Pl.'s Ex. 22 ¶4. (Exhibit numbers refer to exhibits attached to Knighthead's motion.) Defendants have not produced a single document from their hard drives or other folders. Their entire document production came from Jamea's *inbox* (and only his inbox).

Second, Defendants failed to produce communications with key witnesses, such as the owner of the neighboring tract. Defendants argue that this failure is due to an inadvertent failure to produce documents from Defendants' "sent" folders (Resp. at 7)—a failure they still have not remedied. But the documents obtained from third-parties included emails both to and from Jamea. And, the neighbor produced emails that he sent to Jamea, but which Jamea did not produce:

> From: Brent Friedman <brent@parklanecompanies.com>
> Sent: Tuesday, April 26, 2022 10:47 PM
> To: 'Shahin Jamea' <sjamea@oxberrygroup.com>
> Cc: becky@currentstanding.com
> Subject: RE: Surveys. [GSB]
>
> Hey,
>
> Sorry. Yes. The recorded deed references the PSA for all purposes. Attached is from the PSA, related to post-closing obligation for electrical service.

Pl.'s Ex. 19 at 1. Defendants have offered no explanation for their failure to produce communications with the neighbor from Jamea's inbox, which, again, is the only place Defendants searched.

2
4884-2317-9651, v. 1

Defendants' failure to produce these highly relevant communications can be interpreted only as an attempt to conceal evidence of Jamea's involvement in removing the power pole. Again, Jamea initially denied having any involvement, and blamed Knighthead (as his only excuse for avoiding the contract). *See* Pl.'s Ex. 17 at 3. Jamea's involvement was uncovered only because Knighthead subpoenaed third parties.

Third, Defendants attempt to shift blame for their failures by asserting that Defendants (seven months after Knighthead served its request for production) "attempted to get an agreement on parameters for document searches to provide supplement documents." Resp. at 4. The fact is that Knighthead attempted for months to confer and obtain Defendants' voluntary compliance on discovery, to no avail. *See* Pl.'s Ex. 1. For example, in April 2023, Knighthead wrote a letter memorializing a phone call which pointed out Defendants' failure to respond "with meaningful discovery answers" in a timely fashion. Defendants' initial delays ultimately led to the parties having to seek a new scheduling order. *See* Pl.'s Ex. 1 at 1; Agreed Mot. to Amend Scheduling Order (Doc. 18). In June 2023, Knighthead had to follow up with Defendants because their production did not include "documents kept outside of email accounts" and because it did not include communications with the neighbor, among others. Pl.'s Ex. 1 at 12–13. Again, in August 2023, Knighthead attempted to confer with Defendants. *Id.* at 15. Defendants did not "attempt to get an agreement" until after Knighthead was forced to file its motion to compel, and after Knighthead incurred the costs of a

useless deposition (much of which was devoted to determining why Defendants had so utterly failed in their document production obligations).

Finally, Defendants falsely assert that they have "supplemented the documents uploaded" and are "providing supplementation for any additional responsive documents." Resp. at 7. As of the date of this filing, Defendants have not produced a single additional document. And, again, Defendants offer no explanation for their failure to conduct diligent searches and document productions when Knighthead first served its requests for production (in February).

## II. Defendants exaggerate the number of files they need to review.

Defendants argue their months of time-wasting should be excused and they should be allowed to conduct word searches across their documents—as opposed to reviewing each relevant document. For at least two reasons, the Court should deny Defendants' request and order them to review their documents for responsive documents.

First, Defendants grossly exaggerate the number of documents they need to review. Defendants claim they have provided their hard drive and email to a third-party discovery vendor. They assert this universe of documents consists of 96,000 individual documents—but, obviously, most are totally irrelevant, and Knighthead has never suggested that Defendants must manually review *every document* in Defendants' emails and hard drives. Rather, Defendants need only review

documents from the relatively short time period encompassing the parties' transaction—less than a year.[1]

Jamea testified that he does not delete emails. Pl.'s Ex. 2 at 21:1–4. Therefore, the 96,000 figure includes emails and other documents for many years pre-dating the parties' transaction. Defendants have offered no evidence to show that it would be infeasible or unduly burdensome for them to manually review documents *from the relevant time period and concerning the relevant persons*. Knighthead was able to do so—months ago.

Second, given Defendants' repeated failures and apparent attempts to conceal relevant evidence, Knighthead has no confidence that Defendants would or could conduct adequate word searches. Further complicating matters is Jamea's allegedly faulty memory. At his deposition, among the dozens of relevant facts that he claimed not to remember, Jamea could not recall the lenders he was considering to fund the transaction; nor could he remember whether he had any communications with potential investors. Notably, Defendants' Rule 26 disclosures do not list any of Defendants' potential lenders or investors. It therefore seems unlikely that Defendants would create an adequate list of search terms. And more fundamentally, Defendants waited seven months before even proposing to conduct word searches. Defendants' belated request begs the question: how had they been collecting and reviewing documents over the past seven months?

---

[1] This was explained to Defendants. *See* Defs.' Ex. 3 ("This case involves a relatively short time-frame, and as far as we can tell, your client has only three records custodians (Shahin, PJ, and Espinosa).").

III. The Court should overrule Defendants' evidentiary objections.

A. Defendants' hearsay and authenticity objections are frivolous.

Defendants object to 16 of Plaintiffs' exhibits (Exhibits 3–13, 16, 18–21, 23, and 25) as hearsay and as lacking foundation.[2] Plaintiff's motion is a motion to compel; not a summary judgment motion—and this is not trial. Assuming that the rules of evidence even apply to a motion to compel discovery, the Court should overrule Defendants' objections—most are patently absurd.

**Exhibits 3, 5, and 7** are the parties' purchase and sale agreement and amendments to the agreement. Jamea signed all three. These are obviously not hearsay. *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) ("Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay."). Defendants' authenticity objection is also frivolous. Defendants do not actually assert that the contract documents are inauthentic—they just assert that the documents are "suffering a lack of authentication." This Court can find the contract documents are authentic based on their "appearance, contents, substance, internal patterns or other distinctive characteristics." Fed. R. Evid. 901(b)(4).

**Exhibits 4, 6 and 25** are emails from Defendant Shahin Jamea. These are obviously not hearsay. Fed. R. Evid. 801(d)(2) (party opponent admission). And,

---

[2] Defendants also object to these exhibits as being "non-originals." Resp. at 7. This objection is without merit because "[a] duplicate is admissible to the same extent as the original." Fed. R. Evid. 1003.

again, the Court can find them authentic based on their contents alone. If Jamea really thought these emails were fabricated, he surely would have said so.

**Exhibits 8, 9, 12, 16, and 23** are emails from Defendants' agents, such as their attorneys, employees, and debt brokers. *See* Fed. R. Evid. 801(d)(2)(D). Alternatively, the Court can consider these documents (and any other) under the residual hearsay exception. *See* Fed. R. Evid. 807.

But, again, at this stage in the proceedings, Knighthead is not trying to use these, or any other document, to prove the merits of its claims. For purposes of this motion, these documents show that Defendants have failed to meet their discovery obligations. *See id.* (hearsay is admissible when "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."). These emails are authentic. Fed. R. Evid. 901(b)(4).

**Exhibit 10** is an appraisal prepared for one of Defendants' potential lenders. It is not being offered for the truth of the matter asserted—i.e., that Defendants' plans for the property were not financially feasible. Rather it shows that Defendants' lenders *thought* the project was not financially feasible. Whether the project was feasible is irrelevant. The point is that the lenders were not willing to lend Defendants money to close on the transaction, which is why Defendants had to fabricate a pretext for backing out of the transaction. Nor does this document suffer from a lack of authenticity: *Defendants produced this document.* Unless Defendants have produced fabricated evidence, they have no basis for challenging this document's authenticity.

**Exhibit 11** is an email from one of Defendants' potential investors. The investor said that he would not invest in the project because he was "not too bullish on the proposed development." These statements are not hearsay because they simply relate to "the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3). Defendants have no basis for challenging this document's authenticity because this document was also produced by Defendants.

**Exhibit 13** is an email from the title company, in which the title company explains its reasons for revising the title commitment. These statements also go to motive, intent, or plan. Fed. R. Evid. 803(3). These emails are authentic. Fed. R. Evid. 901(b)(4).

**Exhibit 18** are documents produced by CenterPoint Energy. They include a "Facilities Extension Agreement for Distribution Voltage Facilities" and a check, which *Jamea admitted signing*:

```
13      Q.  Okay.  The next page is an agreement.  This one
14   purports to be an agreement between CenterPoint and my
15   client.  Right?
16      A.  Yes.
17      Q.  And then on the next page, on the signature
18   page, you DocuSigned on behalf of my client.  Right?
19      A.  I DocuSigned, yes.
```

**Exhibits 19, 20, and 21** are documents produced by the owner of the adjoining property. These documents include Jamea's own statements, which are obviously not hearsay. Fed. R. Evid. 801(d)(2). Moreover, these documents are not offered for

the truth of the statements. They are offered to show that Jamea failed to produce his communications with the neighbor—an issue that Defendants do not dispute. These documents are authentic. Fed. R. Evid. 901(b)(4).

> B. **Defendants' objections to the attorneys' fee affidavit are also without merit.**
>
> > 1. **Knighthead relies on the correct, federal standard.**

Defendants claim Knighthead's attorney's fee affidavit "does not actually address the '*Johnson factors*' and merely sets out the [*Arthur Andersen & Co. v. Perry Equip Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)] state of Texas factors." Defendants are mistaken; the attorney's fee affidavit does discuss *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974). But it should not matter. "[T]he twelve factors set out in *Johnson* and the eight factors set out in *Arthur Andersen*, for all practical purposes, completely overlap." *Impact Fluid Solutions Lp v. Bariven SA*, No. 4:19-CV-00652, 2022 WL 824836, at *4 (S.D. Tex. Mar. 18, 2022). That is because "[i]n *Arthur Andersen*, the Texas Supreme Court adopted the factors established in *Johnson*." *Compass Bank v. Veytia*, No. EP-11-CV-228-PRM, 2012 WL 627756, at *2 n. 6 (W.D. Tex. Feb. 24, 2012).

> > 2. **Knighthead's requested fees are reasonable.**

Knighthead requests fees for 52.6 hours of work done over five months (April–August 2023). That time includes phone calls with and drafting correspondence to opposing counsel regarding Defendants' discovery deficiencies, and preparing for and taking Jamea's deposition, which will need to be taken again because of Defendants' discovery failures. *See* Doc. 24-1 at 169, 174, 177, 179. And it

9
4884-2317-9651, v. 1

includes time spent drafting the motion to compel. (Knighthead's present fee request does not include time spent on this reply, further supporting the reasonableness of the request.[3]) *See id.* at 179. All of this time is directly attributable to Defendant's discovery failures.

Defendants argue this time is excessive. But Defendants offer no evidence to controvert Knighthead's counsel's sworn affidavit attesting to the reasonableness and necessity these efforts and expenses. *See* Pl.'s Ex. 24 ¶6. Defendants' request for a mere $26,613 in fees is reasonable. *See Shumpert v. City of Tupelo*, 905 F.3d 310, 326 (5th Cir. 2018) ("This court has previously held that sanctions of even $50,000 are not 'on the high end of the scale.'").

## CONCLUSION AND PRAYER

For these reasons, Knighthead respectfully asks the Court to: (1) compel Defendants to search for and produce responsive documents wherever they may reasonably be found; (2) award Knighthead reasonable attorneys' fees incurred in presenting its Motion; (3) award Knighthead reasonable attorneys' fees incurred in preparing for and taking Jamea's first deposition; and (4) order Jamea to appear at a second deposition at the offices of Knighthead's counsel.

Respectfully submitted,

*/s/ Matthew Baumgartner*
MATTHEW BAUMGARTNER,
Attorney in Charge
Texas State Bar No. 24062605
Southern District of Texas No. 1626953
mbaumgartner@abaustin.com

---

[3] Knighthead reserves the right to seek additional fees pursuant to its fee request and in an additional motion for discovery sanctions, should one be necessary.

(512) 435-2308
**DAVID KING,** Of Counsel
Texas State Bar No. 24083310
Southern District of Texas No. 2414517
dking@abaustin.com
(512) 436-2305
**GUILLERMO ALARCON**, Of Counsel
Texas State Bar No. 24099176
Southern District of Texas No. 3122674
galarcon@abaustin.com
(512) 435-2383
ARMBRUST & BROWN, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas 78701
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2023, a true and correct copy of the foregoing was served on all counsel of record.

*/s/ Guillermo A. Alarcón*
Guillermo A. Alarcón