IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KH-REIT II FUNDING XXII, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:22-CV-3730 |
| | § | |
| GRANT MEADOWS, L.L.C. and | § | |
| SHAHIN JAMEA, | § | |
| *Defendants.* | § | |

## PLAINTIFF'S SECOND MOTION TO COMPEL
## AND FOR ADDITIONAL DISCOVERY SANCTIONS

TO THE HONORABLE KEITH P. ELLISON:

Plaintiff KH-REIT II Funding XXII, LLC ("Knighthead") files this Second

Motion to Compel and For Additional Discovery Sanctions. In support, Knighthead

shows the following:

## I.    Background

On August 31, 2023, Knighthead filed a motion to compel and for discovery

sanctions. *See* Doc. 24. One of Knighthead's chief complaints was that Grant

Meadows had not searched for or produced any documents from the email accounts

of Pejman Jamea (one of Grant Meadows's two principals, along with Shahin

Jamea) or Barry Espinosa (Shahin Jamea's employee). *See* Doc. 24 at 15–16. The

Court granted Knighthead's motion. The Court ordered Shahin Jamea to appear at

a second deposition, and sanctioned Defendants by ordering them to pay for the second deposition, including attorneys' fees.[1] *See* Minute Entry, Oct. 31, 2023.

The Court also instructed Knighthead to "reconvene the hearing after the second deposition to decide if additional sanctions are appropriate." *Id.* For the reasons explained below, additional sanctions are indeed appropriate.

## II. Defendants are *still* refusing to search for relevant documents.

Jamea's second deposition took place on December 19, 2023. Jamea admitted that Defendants had *still* not searched the email accounts of Barry Espinosa or Pejman Jamea for relevant documents—despite being ordered to do so by the Court.[2]

**Barry Espinosa's emails**: Jamea's excuse for not searching Espinosa's email account was that Espinosa is supposed to copy Jamea on every email. So, according to Jamea, all of Espinosa's emails should also be in Jamea's inbox.

Even if it were true that Jamea had instructed Espinosa to copy him on all emails, that is no reason to *not* search Espinosa's email for relevant documents. Espinosa is, himself, an important records custodian in this case.

In fact, Espinosa was *the sole* Grant Meadows employee put in charge of the main issue in this case. As the Court knows, the central facts in the case involve the removal of a power pole from the Property on the eve of the closing; Defendants

---

[1] Those costs have been forwarded to Defendants attorneys with a request that they pay them. *See* Exhibit 1 (Jan. 24, 2024 letter).
[2] *See* Exhibit 2 (S. Jamea Dep. Tr.) at 169:18–171:17.

used the pole's removal as an excuse not to close, and have attempted to blame Knighthead in order to obtain the $650,000 in earnest money.

Despite having initially denied removing the power pole, Defendants have now admitted to it—but only after documents obtained from CenterPoint showed Defendants arranged for the pole's removal. And Knighthead has now learned that Espinosa was the employee Jamea put in charge of removing the power pole.[3] Thus, other than Shahin Jamea, Espinosa is the most centrally important records custodian in the case. Grant Meadows's failure to search for relevant documents in Espinosa's email account is, for this reason alone, inexcusable. But its continuing refusal to do so after the Court's order compelling it (and issuing a first sanction) is truly astounding—and merits more severe sanctions.

Moreover, it is simply not true that Espinosa copies Jamea on all his emails. On February 1, 2024—almost two months after the second deposition—Grant Meadows claimed it "voluntarily" reviewed Espinosa's emails, including the "emails that did not include Mr. Jamea."[4] Despite Jamea's deposition testimony, the production included dozens of emails in which Jamea was not copied—including emails relating to the power pole removal.[5]

Of course, the whole point of the Court ordering Grant Meadows to produce all relevant documents and to make Jamea available for a second deposition at his expense was to ensure that Knighthead's counsel could ask Jamea about relevant

---

[3] Ex. 2 at 181:11-18.
[4] Exhibit 3 (production email, Feb. 1, 2024).
[5] *See, e.g.,* Exhibit 4 (Espinosa Oct. 19, 2022 email)

4878-2531-5234, v. 1

documents. Grant Meadows' tactics—searching and producing Espinosa's emails only *after* the second deposition—was in clear defiance of the Courts' first sanctions order, and, indeed, largely defeated its purpose.

Lastly, it is clear that Defendants are still withholding emails from Espinosa's email account. Defendants' February 1 production contains only emails dated on or *after* October 19, 2022. Almost all the relevant facts in this case occurred before October 2022.

**Pejman Jamea's Emails:** Defendants have also, to this day, still failed to produce any emails from Pejman "PJ" Jamea's email account.[6] Shahin Jamea admitted at his deposition that he has not even checked whether PJ Jamea has relevant documents.[7] He said there was no point in even checking because PJ Jamea "wasn't even involved in the project."[8] Jamea's excuse strains credulity. Grant Meadows is a two-member LLC. PJ Jamea is one of those two members. It is not credible to say that one member of a two-member LLC has no communications regarding the execution or termination of a $14 million contract.

Moreover, document productions show that PJ Jamea had at least *some* involvement in the project. For example, he was copied on emails with potential lenders.[9] And the presentation Defendants put together for lenders certainly suggested that PJ Jamea would be involved in the project.[10]

---

[6] Ex. 2 at 171:1-17.
[7] *Id.*
[8] *Id.*
[9] Exhibit 5 (PJ Jamea Email).
[10] Exhibit 6 (Lender Presentation) at pp. 4, 30.

4878-2531-5234, v. 1

Defendants have a duty to search for responsive documents in PJ Jamea's possession. Defendants cannot simply declare that none exist *without even looking*.

**<u>Wilson Cribbs's Documents:</u>** Defendants have also failed to search for or produce non-privileged documents in the possession of Wilson Cribbs & Goren—the law firm that represented Defendants in the negotiation and subsequent termination of the PSA. As an initial matter, Knighthead has searched and produced all relevant, non-privileged documents from its transactional counsel (Hajjar Peters). Defendants must do the same.

Their failure to do so is especially egregious because Wilson Cribbs was also a key actor. It was the law firm that asked the title company to add an eleventh-hour exception to the title commitment after Grant Meadows removed the power pole. Though the title company did not add anything substantively new or different to the exceptions, it did include language that Defendants used as their pretext for terminating the PSA—all of which was done through Wilson Cribbs.

At his deposition, Jamea said that he has not asked Wilson Cribbs to produce documents, and insisted that if Knighthead wants documents from Wilson Cribbs, Knighthead will have to serve Wilson Cribbs with a subpoena.[11] But Defendants are required to produce documents that are within Defendants' "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Any documents in Wilson Cribbs' possession are subject to Defendants' control. In fact, under Texas law, Wilson Cribbs' entire file is Defendants' property. *See In re George*, 28 S.W.3d 511, 516 (Tex. 2000) ("The

---

[11] Ex. 2 at 171:18–172:7.

4878-2531-5234, v. 1

attorney is the agent of the client, and the work product generated by the attorney in representing the client belongs to the client."). Wilson Cribbs undeniably has discoverable documents—*e.g,* communications with the title company. Defendants have no excuse for failing to produce these documents.

## III. Conclusion and Prayer

The Court has already sanctioned Defendants once by ordering Defendants to pay the costs associated with Jamea's second deposition. Despite this, Defendants continue to defy the Court's order.

Knighthead asks the Court to enter a second order requiring Defendants to search for and produce documents. Knighthead also asks that Defendants be sanctioned by awarding Knighthead its attorney's fees incurred in connection with Defendants' discovery shortcomings. Those fees amount to: $33,808.[12]

Defendants should be sanctioned an additional amount the Court deems sufficient to deter further discovery misconduct. *See* Fed. R. Civ. P. 37(b)(2)(A). Finally, Knighthead asks the Court to warn Defendants that further failure to comply with the Court's order will result in case-dispositive sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi) (authorizing default judgment where party disobeys court order); *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758–59 (5th Cir. 2019).

---

[12] *See* Doc. 24-1 at p. 165 (First Atty's Fee Aff.); Exhibit 7 (Second Atty's Fee Aff.). This fee request is without prejudice to and is not in place of Knighthead's attorneys' fees claim in this case.

4878-2531-5234, v. 1

Respectfully submitted,

*/s/ Matthew Baumgartner*
MATTHEW BAUMGARTNER,
Attorney in Charge
Texas State Bar No. 24062605
Southern District of Texas No. 1626953
mbaumgartner@abaustin.com
(512) 435-2308
DAVID KING, Of Counsel
Texas State Bar No. 24083310
Southern District of Texas No. 2414517
dking@abaustin.com
(512) 436-2305
GUILLERMO ALARCON, Of Counsel
Texas State Bar No. 24099176
Southern District of Texas No. 3122674
galarcon@abaustin.com
(512) 435-2383
ARMBRUST & BROWN, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas 78701
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, a true and correct copy of the foregoing was served on all counsel of record.

*/s/ Guillermo A. Alarcón*
Guillermo A. Alarcón

4878-2531-5234, v. 1

## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiff has attempted to confer with Defendants about their discovery obligations for months to no avail. Attempts to resolve this discovery dispute without court intervention have failed.

*/s/ Guillermo A. Alarcón*
Guillermo A. Alarcón

4878-2531-5234, v. 1