<u>EXHIBIT INDEX</u>

Exhibit 1        January 24, 2024 Letter to R. MacNaughton

Exhibit 2        Shahin Jamea Deposition Transcript

Exhibit 3        February 1, 2024 Email Regarding Document Production

Exhibit 4        October 19, 2022 Emails from B. Espinosa

Exhibit 5        Emails with PJ Jamea

Exhibit 6        Lender Presentation

Exhibit 7        Attorneys' Fees Affidavit

4878-2038-5187, v. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KH-REIT II FUNDING XXII, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:22-CV-3730 |
| | § | |
| GRANT MEADOWS, L.L.C. and | § | |
| SHAHIN JAMEA, | § | |
| *Defendants.* | § | |

**PLAINTIFF'S SECOND MOTION TO COMPEL
AND FOR ADDITIONAL DISCOVERY SANCTIONS**

TO THE HONORABLE KEITH P. ELLISON:

Plaintiff KH-REIT II Funding XXII, LLC ("Knighthead") files this Second

Motion to Compel and For Additional Discovery Sanctions. In support, Knighthead

shows the following:

**I.     Background**

On August 31, 2023, Knighthead filed a motion to compel and for discovery

sanctions. *See* Doc. 24. One of Knighthead's chief complaints was that Grant

Meadows had not searched for or produced any documents from the email accounts

of Pejman Jamea (one of Grant Meadows's two principals, along with Shahin

Jamea) or Barry Espinosa (Shahin Jamea's employee). *See* Doc. 24 at 15–16. The

Court granted Knighthead's motion. The Court ordered Shahin Jamea to appear at

1

a second deposition, and sanctioned Defendants by ordering them to pay for the second deposition, including attorneys' fees.[1] *See* Minute Entry, Oct. 31, 2023.

The Court also instructed Knighthead to "reconvene the hearing after the second deposition to decide if additional sanctions are appropriate." *Id.* For the reasons explained below, additional sanctions are indeed appropriate.

## II.  Defendants are *still* refusing to search for relevant documents.

Jamea's second deposition took place on December 19, 2023. Jamea admitted that Defendants had *still* not searched the email accounts of Barry Espinosa or Pejman Jamea for relevant documents—despite being ordered to do so by the Court.[2]

**Barry Espinosa's emails**: Jamea's excuse for not searching Espinosa's email account was that Espinosa is supposed to copy Jamea on every email. So, according to Jamea, all of Espinosa's emails should also be in Jamea's inbox.

Even if it were true that Jamea had instructed Espinosa to copy him on all emails, that is no reason to *not* search Espinosa's email for relevant documents. Espinosa is, himself, an important records custodian in this case.

In fact, Espinosa was *the sole* Grant Meadows employee put in charge of the main issue in this case. As the Court knows, the central facts in the case involve the removal of a power pole from the Property on the eve of the closing; Defendants

---

[1] Those costs have been forwarded to Defendants attorneys with a request that they pay them. *See* Exhibit 1 (Jan. 24, 2024 letter).
[2] *See* Exhibit 2 (S. Jamea Dep. Tr.) at 169:18–171:17.

used the pole's removal as an excuse not to close, and have attempted to blame Knighthead in order to obtain the $650,000 in earnest money.

Despite having initially denied removing the power pole, Defendants have now admitted to it—but only after documents obtained from CenterPoint showed Defendants arranged for the pole's removal. And Knighthead has now learned that Espinosa was the employee Jamea put in charge of removing the power pole.[3] Thus, other than Shahin Jamea, Espinosa is the most centrally important records custodian in the case. Grant Meadows's failure to search for relevant documents in Espinosa's email account is, for this reason alone, inexcusable. But its continuing refusal to do so after the Court's order compelling it (and issuing a first sanction) is truly astounding—and merits more severe sanctions.

Moreover, it is simply not true that Espinosa copies Jamea on all his emails. On February 1, 2024—almost two months after the second deposition—Grant Meadows claimed it "voluntarily" reviewed Espinosa's emails, including the "emails that did not include Mr. Jamea."[4] Despite Jamea's deposition testimony, the production included dozens of emails in which Jamea was not copied—including emails relating to the power pole removal.[5]

Of course, the whole point of the Court ordering Grant Meadows to produce all relevant documents and to make Jamea available for a second deposition at his expense was to ensure that Knighthead's counsel could ask Jamea about relevant

---

[3] Ex. 2 at 181:11-18.
[4] Exhibit 3 (production email, Feb. 1, 2024).
[5] *See, e.g.,* Exhibit 4 (Espinosa Oct. 19, 2022 email)

documents. Grant Meadows' tactics—searching and producing Espinosa's emails only *after* the second deposition—was in clear defiance of the Courts' first sanctions order, and, indeed, largely defeated its purpose.

Lastly, it is clear that Defendants are still withholding emails from Espinosa's email account. Defendants' February 1 production contains only emails dated on or *after* October 19, 2022. Almost all the relevant facts in this case occurred before October 2022.

**Pejman Jamea's Emails:** Defendants have also, to this day, still failed to produce any emails from Pejman "PJ" Jamea's email account.[6] Shahin Jamea admitted at his deposition that he has not even checked whether PJ Jamea has relevant documents.[7] He said there was no point in even checking because PJ Jamea "wasn't even involved in the project."[8] Jamea's excuse strains credulity. Grant Meadows is a two-member LLC. PJ Jamea is one of those two members. It is not credible to say that one member of a two-member LLC has no communications regarding the execution or termination of a $14 million contract.

Moreover, document productions show that PJ Jamea had at least *some* involvement in the project. For example, he was copied on emails with potential lenders.[9] And the presentation Defendants put together for lenders certainly suggested that PJ Jamea would be involved in the project.[10]

---

[6] Ex. 2 at 171:1-17.
[7] *Id.*
[8] *Id.*
[9] Exhibit 5 (PJ Jamea Email).
[10] Exhibit 6 (Lender Presentation) at pp. 4, 30.

Defendants have a duty to search for responsive documents in PJ Jamea's possession. Defendants cannot simply declare that none exist *without even looking*.

**Wilson Cribbs's Documents:** Defendants have also failed to search for or produce non-privileged documents in the possession of Wilson Cribbs & Goren—the law firm that represented Defendants in the negotiation and subsequent termination of the PSA. As an initial matter, Knighthead has searched and produced all relevant, non-privileged documents from its transactional counsel (Hajjar Peters). Defendants must do the same.

Their failure to do so is especially egregious because Wilson Cribbs was also a key actor. It was the law firm that asked the title company to add an eleventh-hour exception to the title commitment after Grant Meadows removed the power pole. Though the title company did not add anything substantively new or different to the exceptions, it did include language that Defendants used as their pretext for terminating the PSA—all of which was done through Wilson Cribbs.

At his deposition, Jamea said that he has not asked Wilson Cribbs to produce documents, and insisted that if Knighthead wants documents from Wilson Cribbs, Knighthead will have to serve Wilson Cribbs with a subpoena.[11] But Defendants are required to produce documents that are within Defendants' "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Any documents in Wilson Cribbs' possession are subject to Defendants' control. In fact, under Texas law, Wilson Cribbs' entire file is Defendants' property. *See In re George*, 28 S.W.3d 511, 516 (Tex. 2000) ("The

---

[11] Ex. 2 at 171:18–172:7.

attorney is the agent of the client, and the work product generated by the attorney in representing the client belongs to the client."). Wilson Cribbs undeniably has discoverable documents—*e.g.,* communications with the title company. Defendants have no excuse for failing to produce these documents.

## III.   Conclusion and Prayer

The Court has already sanctioned Defendants once by ordering Defendants to pay the costs associated with Jamea's second deposition. Despite this, Defendants continue to defy the Court's order.

Knighthead asks the Court to enter a second order requiring Defendants to search for and produce documents. Knighthead also asks that Defendants be sanctioned by awarding Knighthead its attorney's fees incurred in connection with Defendants' discovery shortcomings. Those fees amount to: $33,808.[12]

Defendants should be sanctioned an additional amount the Court deems sufficient to deter further discovery misconduct. *See* Fed. R. Civ. P. 37(b)(2)(A). Finally, Knighthead asks the Court to warn Defendants that further failure to comply with the Court's order will result in case-dispositive sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi) (authorizing default judgment where party disobeys court order); *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758–59 (5th Cir. 2019).

---

[12] *See* Doc. 24-1 at p. 165 (First Atty's Fee Aff.); Exhibit 7 (Second Atty's Fee Aff.). This fee request is without prejudice to and is not in place of Knighthead's attorneys' fees claim in this case.

Respectfully submitted,

*/s/ Matthew Baumgartner*

MATTHEW BAUMGARTNER,
Attorney in Charge
Texas State Bar No. 24062605
Southern District of Texas No. 1626953
mbaumgartner@abaustin.com
(512) 435-2308
DAVID KING, Of Counsel
Texas State Bar No. 24083310
Southern District of Texas No. 2414517
dking@abaustin.com
(512) 436-2305
GUILLERMO ALARCON, Of Counsel
Texas State Bar No. 24099176
Southern District of Texas No. 3122674
galarcon@abaustin.com
(512) 435-2383
ARMBRUST & BROWN, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas 78701
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, a true and correct copy of the

foregoing was served on all counsel of record.

*/s/ Guillermo A. Alarcón*

Guillermo A. Alarcón

## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiff has attempted to confer with Defendants about their discovery obligations for months to no avail. Attempts to resolve this discovery dispute without court intervention have failed.

*/s/ Guillermo A. Alarcón*
Guillermo A. Alarcón

# EXHIBIT 1

# ARMBRUST & BROWN, PLLC

### ATTORNEYS AND COUNSELORS

100 CONGRESS AVENUE, SUITE 1300
AUSTIN, TEXAS 78701-2744
512-435-2300

FACSIMILE 512-435-2360

*Guillermo Alarcon*
*(512) 435-2383*
*galarcon@abaustin.com*

January 24, 2024

**VIA ELECTRONIC MAIL (robert@porterfirm.com)**

J. Robert MacNaughton
Porter Law Firm
2221 South Voss Road
Houston, TX  77057

> **Re:**   ***KH-REIT II Funding XXII, LLC v. Grant Meadows, LLC***, **Case No. 4:22-cv-03730, in the United States District Court for the Southern District of Texas, Houston Division**

Dear Robert:

As you are aware, on October 31, 2023, the Court grant our motion to compel. As reflected by the Court's minute entry, the Court ordered Defendants "to pay for the costs of the second deposition, including attorney's fees and the costs of a court reporter and videographer."

Enclosed please find invoices from the court reporter, videographer, and our law firm. Please confirm that your client will remit payment directly to the court reporter and videographer, as well as our firm. Also, please let us know when we may expect payment.

Sincerely,

*/s/ Guillermo A. Alarcon*

GAA:GA

Enclosures

cc:   Weston Ray
        Matthew Baumgartner

Exhibit 1 Page 1 of 7



# INVOICE

| Invoice No. | Invoice Date | Payment Terms |
|---|---|---|
| 20240589069-14 | 1/15/2024 | Net 30 |

| Job No. | Job Date | Balance |
|---|---|---|
| 6508145 | 12/19/2023 | $1,407.50 |

| Case Name |
|---|
| Kh-Reit II Funding XXII, LLC v. Grant Meadows, L.L.C. |

| Case No. |
|---|
| 422CV3730 |

**SW - AUSTIN**
**16825 Northchase Drive Suite 900**
**Houston TX 77060**
**Phone: 5122924249  Fax: 512-292-3866**

**Guillermo Alarcon, Esquire**
**Armbrust & Brown, PLLC**
**100 Congress Avenue Suite 1300**
**Austin TX 78701**

| Job Location | Ordered By | Reference Info. |
|---|---|---|
| Armbrust & Brown, PLLC<br>100 Congress Avenue Suite 1300<br>Austin TX 78701 | Guillermo Alarcon, Esquire<br>Armbrust & Brown, PLLC<br>100 Congress Avenue Suite 1300<br>Austin TX 78701 | Client Matter No:<br>Claim No:<br>Insured:<br>D/O/L: |

| Services/Items | Units | Type | Rate | Charges |
|---|---|---|---|---|
| ORIGINAL TRANSCRIPT OF: General | | | | |
| Per Diem - Half Day | 1.00 | N/A | $150.00 | $150.00 |
| Administration Fee | 1.00 | N/A | $55.00 | $55.00 |
| Reporter Appearance Fee Per Hour | 3.00 | Hours | $70.00 | $210.00 |
| Shipping of Hard Copy Original, Copy, or Media - Standard | 1.00 | N/A | $25.00 | $25.00 |
| ORIGINAL TRANSCRIPT OF: Shahin "Sean" Jamea | | | | |
| Original | 117.00 | Pages | $5.75 | $672.75 |
| Exhibit | 25.00 | Pages | $0.75 | $18.75 |
| Exhibits (Color) | 45.00 | Pages | $2.00 | $90.00 |
| Condensed Transcript | 1.00 | N/A | $15.00 | $15.00 |
| Transcript Handling & Processing | 1.00 | N/A | $70.00 | $70.00 |
| Litigation Technology, Support and Security Management | 1.00 | N/A | $55.00 | $55.00 |
| Video Pages | 92.00 | Pages | $0.50 | $46.00 |

| | |
|---|---|
| **Total Due** | **$1,407.50** |
| AFTER 2/29/2024 PAY | $1,618.63 |
| **(-) Payments/Credits** | **$0.00** |
| **(+) Finance Charges/Late Fees** | **$0.00** |
| **(=) New Balance** | **$1,407.50** |

**Tax ID : 76-0523238  Nevada Firm Registration # 067F**                Phone: 512-435-2300

Invoice not paid by due date is subject to interest of 1.5% per month. We will make reasonable efforts to allocate payments properly. U.S. Legal Support may recover any fees or costs it incurs in collecting any unpaid amounts. Any rights regarding allocations, refunds or adjustments after 90 days from payment shall be waived by payer.
Review our Terms & Conditions for additional information at our website www.uslegalsupport.com.

Exhibit 1 Page 2 of 7

*"Please detach bottom portion and return with payment."*

Guillermo Alarcon, Esquire
Armbrust & Brown, PLLC
100 Congress Avenue Suite 1300
Austin TX 78701

| | | | | |
|---|---|---|---|---|
| **Invoice No.** | 20240589069-14 | **Invoice Date** | 1/15/2024 |
| **Job No.** | 6508145 | **Case No.** | 422CV3730 |
| **Total Due** | **$1,407.50** | | |

Remit To: **U.S. Legal Support, Inc.**
**P.O. Box 4772**
**Houston, TX 77210**

**PAY BY CREDIT CARD**  

**Cardholder's Name:**

**Card Number:**

**Exp. Date:**          **Phone:**

**Billing Address:**

**Zip:**          **Card Security Code:**

**Amount to Charge:**

**Cardholder's Signature:**

Exhibit 1 Page 3 of 7



# INVOICE

| Invoice No. | Invoice Date | Payment Terms |
|---|---|---|
| 20240589578-14 | 1/22/2024 | Net 30 |

| Job No. | Job Date | Balance |
|---|---|---|
| 6508145 | 12/19/2023 | $1,035.00 |

| Case Name |
|---|
| Kh-Reit II Funding XXII, LLC v. Grant Meadows, L.L.C. |

| Case No. |
|---|
| 422CV3730 |

**SW - AUSTIN**
**16825 Northchase Drive Suite 900**
**Houston TX 77060**
**Phone: 5122924249  Fax: 512-292-3866**

**Matthew Baumgartner, Esquire**
**Armbrust & Brown, PLLC**
**100 Congress Avenue Suite 1300**
**Austin TX 78701**

| Job Location | Ordered By | Reference Info. |
|---|---|---|
| Armbrust & Brown, PLLC<br>100 Congress Avenue Suite 1300<br>Austin TX 78701 | Matthew Baumgartner, Esquire<br>Armbrust & Brown, PLLC<br>100 Congress Avenue Suite 1300<br>Austin TX 78701 | Client Matter No:<br>Claim No:<br>Insured:<br>D/O/L: |

| Services/Items | Units | Type | Rate | Charges |
|---|---|---|---|---|
| VIDEOGRAPHY SERVICES OF: General | | | | |
| Professional Legal Videography | 3.50 | Hours | $165.00 | $577.50 |
| Media Stock | 1.00 | N/A | $25.00 | $25.00 |
| Video/Text Synchronization | 3.50 | Hours | $95.00 | $332.50 |
| VIDEOGRAPHY SERVICES OF: Shahin "Sean" Jamea | | | | |
| Video Handling & Processing | 1.00 | N/A | $35.00 | $35.00 |
| Video Technology Package | 1.00 | N/A | $65.00 | $65.00 |
| | **Total Due** | | | **$1,035.00** |
| | AFTER 3/7/2024 PAY | | | $1,190.25 |
| | **(-) Payments/Credits** | | | **$0.00** |
| | **(+) Finance Charges/Late Fees** | | | **$0.00** |
| | **(=) New Balance** | | | **$1,035.00** |

**Tax ID : 76-0523238  Nevada Firm Registration # 067F**                        Phone: 512-435-2300

Invoice not paid by due date is subject to interest of 1.5% per month. We will make reasonable efforts to allocate payments properly. U.S. Legal Support may recover any fees and costs it
incurs in collecting any unpaid amounts. Any rights regarding allocations, refunds or adjustments after 90 days from payment shall be waived by payer.
Review our Terms & Conditions for additional information at our website www.uslegalsupport.com.

*"Please detach bottom portion and return with payment."*

Matthew Baumgartner, Esquire
Armbrust & Brown, PLLC
100 Congress Avenue Suite 1300
Austin TX 78701

| Invoice No. | 20240589578-14 | Invoice Date | 1/22/2024 |
|---|---|---|---|
| Job No. | 6508145 | Case No. | 422CV3730 |
| Total Due | **$1,035.00** | | |

Remit To:     **U.S. Legal Support, Inc.**
              **P.O. Box 4772**
              **Houston, TX 77210**

## PAY BY CREDIT CARD     

**Cardholder's Name:**

**Card Number:**

**Exp. Date:**          **Phone:**

**Billing Address:**

**Zip:**              **Card Security Code:**

**Amount to Charge:**

**Cardholder's Signature:**

Exhibit 1 Page 4 of 7

# ARMBRUST & BROWN, PLLC

ATTORNEYS & COUNSELORS

100 Congress Avenue
Suite 1300
Austin, TX 78701-2744

PHONE: (512) 435-2300
FACSIMILE: (512) 435-2360

Federal Tax I.D. No.: 74-2827166

## Billing Summary

KH-REIT II FUNDING XXII, LLC
RBROWN@KNIGHTHEADFUNDING.CO
M

,

January 19, 2024
Client:      049115
Matter:      000101

For Professional Services Rendered Through December 31, 2023

## Account Summary

| Invoice # | Matter Name | Previous Balance | Current Invoice | Credits | Total Due |
|-----------|-------------|-----------------|-----------------|---------|-----------|
| 199449 | 2701 MAIN STREET (HOUSTON) | $1,147.50 | $8,464.60 | $0.00 | $9,612.10 |

*Please return with all remittance for proper credit.*

*Total due reflects payments received as of the date of this invoice.*

*Thank you.*

*Amount of Payment:* _____

Exhibit 1 Page 5 of 7

# ARMBRUST & BROWN, PLLC
## ATTORNEYS & COUNSELORS
100 Congress Avenue
Suite 1300
Austin, Texas 78701-2744

PHONE: (512) 435-2300
FACSIMILE: (512) 435-2360

Federal Tax I.D. No.: 74-2827166

KH-REIT II FUNDING XXII, LLC
RBROWN@KNIGHTHEADFUNDING.CO
M
,

| | |
|---|---|
| January 19, 2024 | |
| Client: | 049115 |
| Matter: | 000101 |
| Invoice #: | 199449 |
| Page: | 1 |

RE:  2701 MAIN STREET (HOUSTON)

For Professional Services Rendered Through  December 31, 2023

## SERVICES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 12/6/2023 | GAA | ███████████████████████ | 0.2 | $78.00 |
| 12/13/2023 | GAA | ████████████████████████████ | 0.2 | $78.00 |
| 12/14/2023 | GAA | Review Defendants' supplemental production to prepare for deposition of S. Jamea. | 4.2 | $1,638.00 |
| 12/18/2023 | GAA | Prepare for deposition of S. Jamea; compile exhibits for same. | 9.2 | $3,588.00 |
| 12/19/2023 | GAA | Prepare for deposition of S. Jamea; attend and take deposition of S. Jamea. | 5.3 | $2,067.00 |
| 12/20/2023 | MBB | ███████████████████████████. | 0.5 | $267.50 |
| 12/20/2023 | GAA | ███████████████████████████. | 0.3 | $117.00 |
| | | Total Professional Services | 19.9 | $7,833.50 |

## PERSON RECAP

| Person | | Level | Hours | Rate | Amount |
|---|---|---|---|---|---|
| MBB | MATTHEW BAUMGARTNER | PARTNERS | 0.5 | $535.00 | $267.50 |

Exhibit 1 Page 6 of 7

January 19, 2024
Client:          049115
Matter:          000101
Invoice #:       199449

Page:                 2

## PERSON RECAP

| Person | | Level | Hours | Rate | Amount |
|--------|--|-------|-------|------|--------|
| GAA | GUILLERMO A ALARCON | ASSOCIATES | 19.4 | $390.00 | $7,566.00 |

## DISBURSEMENTS

| Date | Description of Disbursements | Amount |
|------|------------------------------|--------|
| 12/6/2023 | ██████████████████████████████ ████████ | $631.10 |
| | Total Disbursements | $631.10 |

| | | |
|--|--|--|
| Total Services | $7,833.50 | |
| Total Disbursements | $631.10 | |
| Total Current Charges | | $8,464.60 |
| Previous Balance | | $1,147.50 |
| **PAY THIS AMOUNT** | | **$9,612.10** |

Exhibit 1 Page 7 of 7

# EXHIBIT 2

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
 2                     HOUSTON DIVISION

 3  KH-REIT II FUNDING XXII,    §
    LLC,                        §
 4       Plaintiff,             §
                                §        Case No. 4:22-CV-3730
 5  v.                          §
                                §
 6  GRANT MEADOWS, L.L.C.,      §
         Defendant.             §
 7

 8  ************************************************************

 9              ORAL AND VIDEOTAPED DEPOSITION OF

10                        SHAHIN JAMEA

11                     December 19, 2023

12                        Volume 2

13  ************************************************************

14

15

16           ORAL AND VIDEOTAPED DEPOSITION OF SHAHIN JAMEA,

17  produced as a witness at the instance of the Plaintiff,

18  and duly sworn, was taken in the above-styled and

19  numbered cause on the 19th of December 2023, from

20  10:17 a.m. to 12:35 p.m., before Isabel Connor, CSR in

21  and for the State of Texas, reported by machine

22  shorthand, at the offices of Armbrust & Brown, PLLC,

23  100 Congress Avenue, Suite 1300, Conference Room 1,

24  Austin, Texas, pursuant to the Federal Rules of Civil

25  Procedure.
```

Exhibit 2 Page 1 of 12

Shahin Jamea Vol 2
December 19, 2023                                    163

1                    A P P E A R A N C E S

2

 FOR THE PLAINTIFF:
3      Mr. Guillermo Alarcon
       ARMBRUST & BROWN, PLLC
4      100 Congress Avenue, Suite 1300
       Austin, Texas 78701

5

6  FOR THE DEFENDANT:
       Mr. Weston P. Ray
7      PORTER LAW FIRM
       2221 South Voss Road
8      Houston, Texas 77057

9

 VIDEOGRAPHER:
10      Ms. Alayna Phillips

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 2 Page 2 of 12

INDEX

Appearances.......................................    2

SHAHIN JAMEA

    Examination by Mr. Alarcon....................  166

Reporter's Certificate............................  253


EXHIBITS
(Provided electronically to the reporter.)

NO.   DESCRIPTION                                    PAGE

25    E-mails                                        174

26    E-mails                                        179

27    E-mails                                        181

28    E-mail                                         184

29    E-mail                                         187

30    E-mails                                        193

31    E-mail                                         195

32    E-mails                                        196

33    E-mail                                         197

34    E-mails                                        198

35    E-mails                                        202

36    Commitment for Title Insurance                 204
      Bates Nos. FNTIC-117 through FNTIC-140

37    Letter dated April 22, 2022, to KH-REIT II     205
      Funding XXII, LLC, from Wilson Cribbs +
      Goren

Exhibit 2 Page 3 of 12

```
 1   38    Letter dated April 29, 2022, to Wilson       206
           Cribbs + Goren from Hajjar/Peters LLP
 2         Bates Nos. KH00085 and KH00086

 3   39    E-mails                                       217

 4   40    E-mails                                       219

 5   41    E-mails                                       220

 6   42    E-mails                                       222

 7   43    E-mail                                        225
           Bates No. KH01266
 8
     44    E-mails                                       232
 9
     45    E-mails                                       239
10
     46    E-mails                                       241
11
     47    E-mails                                       243
12
     48    E-mails                                       244
13
     49    E-mails                                       245
14
     50    E-mails                                       248
15

16

17

18

19

20

21

22

23

24

25
```

Exhibit 2 Page 4 of 12

Shahin Jamea Vol 2
December 19, 2023                              166

```
 1              THE VIDEOGRAPHER:  We're going on the
 2   record.  Today's date is December 19th, 2023.  The time
 3   is 10:17 a.m.  We are beginning the deposition of
 4   Mr. Shahin Jamea.
 5              Can I have Counsel please announce
 6   themselves for the record.
 7              MR. ALARCON:  Guillermo Alarcon.  I'm here
 8   on behalf of the plaintiff.
 9              MR. RAY:  Weston Ray here on behalf of the
10   defendant.
11              THE VIDEOGRAPHER:  Okay.  And will the
12   court reporter please swear -- re- -- re-swear in the
13   witness.
14                    SHAHIN JAMEA,
15   having been first duly sworn, testified as follows:
16                     EXAMINATION
17   BY MR. ALARCON:
18       Q.   Good morning, Mr. Jamea.  Thank you for coming
19   to Austin.  I hope it wasn't too bad of a drive or a
20   flight.
21       A.   Good morning.
22       Q.   This is your second deposition in this case,
23   correct?
24       A.   Right.
25       Q.   You were ordered to appear at this second
```

1   get into the Dropbox is through an E-mail attachment.

2        Q.   Okay.  So, like, if you wanted to save a copy

3   of the sale agreement, you would attach that to an

4   E-mail, e-mail it to someone and then put that in

5   Dropbox?

6        A.   Right.

7        Q.   And if you wanted to go get a copy of the sale

8   agreement, you would have to go look for that E-mail?

9        A.   Right.

10       Q.   Okay.  What about text messages?  Why haven't

11  you produced any text messages?

12       A.   I don't have anything on my phone from a year

13  ago.

14       Q.   Is it, like, on an automatic delete or

15  something?

16       A.   It's an Apple phone, however way the setting

17  is.

18       Q.   Okay.  Have you produced E-mails from Barry

19  Espinosa's E-mail account?

20       A.   I -- I don't know.

21       Q.   You --

22       A.   Anything that -- I don't -- I don't know if we

23  did or not.

24       Q.   Okay.

25       A.   Anything that would have -- Barry would have

Shahin Jamea Vol 2
December 19, 2023                              170

1  e-mailed, I should have been copied on it.  So if I

2  produced my E-mails, you should have his.

3       Q.   So are you saying that Mr. Espinosa copies you

4  on every single E-mail he sends?

5       A.   Yeah, he's supposed to.  Yes.

6       Q.   Okay.  And if he doesn't?  I mean, the only way

7  to know that would be by looking in his E-mail account,

8  right?

9       A.   We can produce his E-mail accounts if you want.

10      Q.   Well --

11      A.   I don't think he has any relevant information

12  that's not in my E-mails, but if you want to review his

13  E-mails, we don't have an objection.

14      Q.   Well -- so that was one of our bases in our

15  motion to compel, was that you didn't search

16  Mr. Espinosa's E-mail account.  Now it sounds like you

17  still haven't?

18      A.   I believe -- I have not searched his E-mail

19  accounts.  I believe anything project-related that Barry

20  sent would be in my E-mails.

21      Q.   Okay.  You believe, but you don't know because

22  you haven't looked?

23           MR. RAY:  Objection, argumentative.

24      Q.   (By Mr. Alarcon)  Right?

25      A.   I have not looked.

1       Q.    Okay.  What about documents from PJ Jamea's

2   E-mail account?

3       A.    He would not -- he doesn't have anything to do

4   with this project.  He would not have anything.

5       Q.    Okay.  So you looked and didn't find anything?

6       A.    I don't need to look.  He wasn't even involved

7   in the project, so he would not be copied on anything.

8   He's just not -- this is not his project.  He wouldn't be

9   involved.

10      Q.    Okay.  I mean, I -- during a break I can go

11  into the -- our database and find E-mails that he was

12  copied on.

13      A.    He is not involved in this project.  I don't

14  know if he was copied on an E-mail.  He could have been

15  copied on an E-mail.  There's no way he's going to send

16  an E-mail about this project.  He wasn't involved in this

17  project.

18      Q.    Okay.  Have you asked Wilson Cribbs to compile

19  and produce nonprivileged documents that they may have?

20      A.    No.

21      Q.    Why not?

22      A.    I'm not supposed to.  You can ask him yourself.

23  It's a third party.  You want me to ask my attorneys to

24  gather E-mails?

25      Q.    Are they subject to your control --

Shahin Jamea Vol 2
December 19, 2023                                         172

```
 1      A.   No.

 2      Q.   -- as your attorneys?

 3      A.   I don't think they are.

 4      Q.   Okay.  So you're saying we should -- we need to

 5  go subpoena your own attorneys to get documents that they

 6  have related to this transaction?

 7      A.   If you want to.

 8           MR. RAY:  Objection, argumentative.

 9      Q.   (By Mr. Alarcon)  Mr. Jamea, what did you do to

10  prepare for this deposition?

11      A.   I read the -- I read most of the previous

12  deposition.

13      Q.   Did you review any documents?

14      A.   No.

15      Q.   Did you review the supplemental production, the

16  700-plus E-mails, that were sent to us after your last

17  deposition?

18      A.   No.

19      Q.   Okay.  All right.  I want to get right into the

20  power pole issue.  As we discussed at the last

21  deposition, you terminated the contract because the title

22  company issued a revised title commitment that identified

23  issues with the power pole, correct?

24           MR. RAY:  Objection, misstates testimony.

25      A.   We terminated based on my attorney's opinion.
```

1  about the -- the power pole in the middle of the property

2  that we've discussed so much in this case?

3      A.   It's either talking about that or there were

4  some power poles on the periphery on the outside.  I

5  don't know which one it's referring to.

6      Q.   Okay.  And then it says here, you mentioned --

7  you being Mr. Espinosa -- you mentioned you will handle

8  that with electrical engineer and architect.  Did I read

9  that right?

10     A.   Yes.

11     Q.   Is it accurate to say that Mr. Espinosa was

12  taking the lead on having the power poles removed?

13     A.   On our side, on the -- on the developer's side,

14  yes, he was working with the civil and electrical

15  engineers.

16     Q.   Okay.  So that was kind of a responsibility

17  that was delegated to Mr. Espinosa?

18     A.   Yes.

19             (Jamea Exhibit No. 27 marked.)

20     Q.   (By Mr. Alarcon)  Okay.  All right.  So now I'm

21  handing you Exhibit 27.  Have you had a chance to review

22  it?

23     A.   Yes.

24     Q.   Now, in this -- this is an E-mail at the top

25  from Mr. Espinosa.  All right.  The subject line is

Shahin Jamea Vol 2
December 19, 2023                                                252

```
1                IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
2                      HOUSTON DIVISION

3  KH-REIT II FUNDING XXII,    §
   LLC,                        §
4       Plaintiff,             §
                               §          Case No. 4:22-CV-3730
5  v.                          §
                               §
6  GRANT MEADOWS, L.L.C.,       §
        Defendant.             §

7
                    REPORTER'S CERTIFICATION
8                  DEPOSITION OF SHAHIN JAMEA
                      December 19, 2023
9

10          I, Isabel Connor, Certified Shorthand Reporter

11   in and for the State of Texas, hereby certify to the

     following:
12

             That the witness, SHAHIN JAMEA, was duly sworn
13
     by the officer and that the transcript of the oral
14
     deposition is a true record of the testimony given by the
15
     witness;
16
             That the original deposition was delivered to
17
     Mr. Matthew Baumgartner;
18
             That a copy of this certificate was served on
19
     all parties and/or the witness shown herein on
20
     January _____, 2024.
21
             I further certify that pursuant to FRCP Rule
22
     30(f)(1) that the signature of the deponent:
23
             ____ was requested by the deponent or a party
24
     before the completion of the deposition and that the
25
```

U.S. LEGAL SUPPORT, INC
713-653-7100                    Exhibit 2 Page 11 of 12

Shahin Jamea Vol 2
December 19, 2023                                        253

1   signature is to be before any notary public and return

2   within 30 days for date of receipt of the transcript.  If

3   returned, the attached Changes and Signature Page

4   contains any changes and the reasons therefore:

5           _X_ was not requested by the deponent or a

6   party before the completion of the deposition.

7           I further certify that I am neither counsel

8   for, related to, nor employed by any of the parties or

9   attorneys in the action in which this proceeding was

10  taken, and further that I am not financially or otherwise

11  interested in the outcome of the action.

12          Certified to by me this 15th day of January

13  2024.

14

15  _____

16  ISABEL CONNOR, Texas CSR 5006
    Expiration Date:  10/31/25
17  U.S. LEGAL SUPPORT
    Firm Registration No. 122
18  16825 Northchase Drive, Suite 900
    Houston, Texas 77060
    (713) 653-7100

19

20

21

22

23

24

25

Exhibit 2 Page 12 of 12

# EXHIBIT 3

## Guillermo Alarcon

| | |
|---|---|
| **From:** | Weston Ray <weston@porterfirm.com> |
| **Sent:** | Thursday, February 1, 2024 2:59 PM |
| **To:** | Guillermo Alarcon |
| **Subject:** | RE: 4:22-cv-003730 |

Good afternoon Guillermo,

Following the deposition, we discussed the production of emails from Oxberry employee Barry Espinosa. While we don't agree these emails would be subject to the discovery requests served on Grant Meadows, we have voluntarily reviewed his records for any documents related to this lawsuit, including emails that did not include Mr. Jamea. I have attached these documents for your review.

If you have any trouble accessing the files, please let me know.

PROD004-65ba6f868f082b6387986caa.zip

Best regards,

**Weston Ray**
Attorney

 PORTER
— LAW FIRM —

**d** 713.533.1933 | **c** 512.563.8114
**2221 S. Voss | Houston, TX 77057**

 **PorterFirm.com**

The contents of this email message are confidential and may be attorney-client privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction, or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately **notify** the sender by reply email or phone and **delete** this message and its attachments, if any. This communication does not reflect an intention by the sender or the sender's client or principal to conduct a transaction or make any agreement by electronic means or to constitute an electronic signature. As required by the United States Treasury Regulations, this communication is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding penalties that may be imposed under the United States federal tax laws.

Exhibit 3 Page 1 of 1

# **EXHIBIT 4**

**To:**                  "Henderson Jr, Rodney E" <rodney.henderson@centerpointenergy.com>
**Cc:**                  "Loggins, Alishia M" <alishia.loggins@centerpointenergy.com>; "Potier, Paige J" <paige.potier@centerpointenergy.com>
**Subject:**          RE: [External Email] 2627 Main St - Existing Work Order Pending
**Attachments:**    2627 Main-CenterPoint Pole at Removal Agreement_2 (FE).pdf

Hi Rodney,

I understand that Jennifer Walter's project have been handed off to you. Can you please update me on the status of the work order attached?

Best Regards,
**Barry Espinosa**
Development Manager
**OXBERRY**GROUP
oxberrygroup.com
bespinosa@oxberrygroup.com
3040 Post Oak, Ste 1800-145
Houston, TX 77056
Ph. (832) 803-6377

---

**From:** Potier, Paige J <paige.potier@centerpointenergy.com>
**Sent:** Friday, October 21, 2022 10:21 AM
**To:** Barry Espinosa <bespinosa@oxberrygroup.com>
**Cc:** Loggins, Alishia M <alishia.loggins@centerpointenergy.com>
**Subject:** FW: [External Email] 2627 Main St - Existing Work Order Pending

Good Morning,

All projects for Jennifer Walter have been handed off, please see Service Consultants contact information below.

Thanks!

RODNEY HENDERSON
RODNEY.HENDERSON@CENTERPOINTENERGY.COM
(713) 945-4188

## PAIGE POTIER

Bellaire Service Center

*Service Delivery Administrative Coordinator*

w. 713.945.4153

4300 Bissonnet St. Bellaire, Tx 77401

paige.potier@centerpointenergy.com 

CenterPointEnergy.com/ServiceConnect



Exhibit 4 Page 1 of 3

iio-010727



Helpful Links: <u>ServiceConnect</u> | <u>Reliability</u> | <u>Service Standards</u> | <u>Power To Choose</u> | <u>SROW</u>

For all new construction or service, please use the following link: <u>Electronic Service Request</u>

For approvals on AUTOMATIC TRANSFER SWITCHES EMAIL SPECS TO
<u>ATS.Approvals@CenterPointEnergy.com</u>

**From:** Barry Espinosa <<u>bespinosa@oxberrygroup.com</u>>
**Sent:** Wednesday, October 19, 2022 9:25 AM
**To:** Potier, Paige J <<u>paige.potier@centerpointenergy.com</u>>
**Cc:** Loggins, Alishia M <<u>alishia.loggins@centerpointenergy.com</u>>
**Subject:** [External Email] 2627 Main St - Existing Work Order Pending

### EXTERNAL EMAIL

**CAUTION:** This message originated from outside CenterPoint Energy. Do not click on links, open attachments, or enter data unless you recognize the sender, were expecting the content and know it to be safe.

Good morning Paige,

We have an existing work order (please see attached) that has been pending since July. Jennifer Walter was the consultant working on it but she let me know recently that she has been transferred to another department. Can you please advise who should I contact for this to be done?

Best Regards,
**Barry Espinosa**
Development Manager
**OXBERRY** GROUP
<u>oxberrygroup.com</u>
<u>bespinosa@oxberrygroup.com</u>
3040 Post Oak, Ste 1800-145
Houston, TX 77056
Ph. (832) 803-6377

Exhibit 4 Page 2 of 3

iio-010728

***** This email is from an external sender outside of the CenterPoint Energy network.  Be cautious about clicking links or opening attachments from unknown sources. *****

Exhibit 4 Page 3 of 3

iio-010729

# EXHIBIT 5

| | |
|---|---|
| **From:** | LEONG, PETER <PeterLeong@ibc.com> |
| **Sent:** | Friday, July 15, 2022 1:33 PM |
| **To:** | Shahin Jamea; Pejman Jamea |
| **Subject:** | RE: Introduction - IBC Lender |

Hi Sean,

I am unable to find any materials on the multi-family project. All I have is an overhead depicting the location of the project. Please send the information and I will dig in asap. Apologies for the inconvenience.

Thank you,


Peter Leong | First Vice President
IBC Houston – Commercial | (713) 285-2256
5615 Kirby Dr. Houston, TX 77005



---

**From:** LEONG, PETER
**Sent:** Thursday, July 14, 2022 10:40 AM
**To:** Shahin Jamea <sjamea@oxberrygroup.com>; Pejman Jamea <pjamea@oxberrygroup.com>
**Subject:** RE: Introduction - IBC Lender

Sean, I am currently up to speed on the basics… multifamily in mid-town, 2 appraisals ordered 1 of which assumes Sonder leases the property. I will familiarize myself further with the materials that Mario has and will discuss with Jeff.

Thank you,


Peter Leong | First Vice President
IBC Houston – Commercial | (713) 285-2256
5615 Kirby Dr. Houston, TX 77005



Exhibit 5 Page 1 of 2

**From:** Shahin Jamea <sjamea@oxberrygroup.com>
**Sent:** Thursday, July 14, 2022 10:33 AM
**To:** LEONG, PETER <PeterLeong@ibc.com>; Pejman Jamea <pjamea@oxberrygroup.com>
**Subject:** [EXTERNAL SENDER] RE: Introduction - IBC Lender

Hi Peter,

No, we were not aware. Not sure if you know, but Mario had ordered appraisals on a MF project we have as a courtesy. We are covering the appraisal fee whether IBC lends on it or not. The closing is end of October.

Are you and Jeff available to meet late next week to review this project?



**Shahin "Sean" Jamea, J.D.**
Principal

**From:** LEONG, PETER <PeterLeong@ibc.com>
**Sent:** Thursday, July 14, 2022 10:23 AM
**To:** Pejman Jamea <pjamea@oxberrygroup.com>; Shahin Jamea <sjamea@oxberrygroup.com>
**Subject:** Introduction - IBC Lender

PJ/Sean, good morning.

As you may be aware, Mario is no longer with the Bank. Please let me know when you have a few minutes to jump on a call so that I may introduce myself. Also, Jeff would like to set up a lunch over the next couple of weeks.

Thank you,

Peter Leong | First Vice President
IBC Houston – Commercial | (713) 285-2256
5615 Kirby Dr. Houston, TX 77005

This email and any attachments are confidential and are intended solely for the use of the named addressee. If you have received this email in error please contact the International Bank of Commerce.

Exhibit 5 Page 2 of 2

# EXHIBIT 6

# 2627 MAIN STREET

182 UNIT :: CLASS A MULTIFAMILY DEVELOPMENT :: DEBT FINANCING REQUEST



## 2627 Main Street, Houston, TX 77002



A **CBRE CAPITAL MARKETS** MULTIFAMILY FINANCING OPPORTUNITY

Exhibit 6 Page 1 of 31

## DEBT & STRUCTURED FINANCE CONTACTS:

:: **Jeff Stein**
Executive Vice President
713.787.1906
jeff.stein@cbre.com

:: **Michael Thompson**
Vice Chairman
713.787.1926
michael.thompson3@cbre.com

:: **Brock Hudson**
Vice President
713.787.1942
brock.hudson@cbre.com



Exhibit 6 Page 2 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT





# Deal Overview

CBRE Capital Markets is pleased to present the opportunity to provide construction financing of $26,375,267 (80% LTC) to Oxberry Group for the development of 2627 Main, a 182-unit, Class "A" multifamily community that is scheduled to be delivered in early 2024.

The property will offer a wide range of micro and studio units, which are growing in popularity amongst young professionals. Although typically more expensive to build as a cost-per-square-foot calculation, with more kitchen and bathroom fixtures in a smaller area, the additional rental income more than offsets the added construction cost. Furthermore, renters benefit from significantly lower rental rates and utility costs, walkability, light rail access and proximity to employment.

The borrower has the option upon completion to master lease 100% of the space to Sonder, a public company that specializes in operating multi-family projects as short-term rentals. Sonder operates over 18,000 units worldwide. The Sonder lease would provide the borrower immediate stable cash flow upon delivery and would remove any lease-up risk. However, the borrower is confident in their ability to lease up the property and isn't committed to bringing in Sonder. At this point, they are just looking at it as a potential backstop.

Exhibit 6 Page 3 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



# Executive Summary

Oxberry Group ("The Borrower") has engaged CBRE Capital Markets ("CBRE") to secure up to $26,375,267 (80% LTC) of construction financing for the development of "2627 Main" ("The Property"), a 182-unit multifamily property located at 2627 Main Street in Houston, TX, in the heart of the vibrant Midtown submarket.

**Loan:** The borrower is seeking high leverage, construction financing with competitive pricing and flexible prepay. Loan proceeds will be used fund land acquisition, development costs, interest/operating shortfall, and closing costs. The borrower is seeking a 3-to-5-year loan with full term IO.

The project boasts strong loan economics with a 9.06% debt yield and a 1.29x DSCR in year 3 of operations. Construction loan takeout out is supported by the project's low leverage refi potential once stabilized.

**The Property:** The property, which is projected to deliver in early 2024, is situated on 0.94 acres of land. It will be one of the first multi-family micro unit mid-rises in the area and will feature 182 single bedroom units. This project is the latest addition to the dramatic transformation continuing to take place in the popular and vibrant Midtown submarket, less than a mile south of downtown Houston. The property will offer a wide range of micro units, which is growing in popularity amongst young professionals. The property is rail served with direct access to the Houston light rail.

The property will not offer any parking given its rail connectivity, proximity to public parking, and central midtown location. The Midtown and CBD development districts are the only two Houston districts that do not have parking requirements, which is why they are considered such a premiere destination for high end retail and entertainment related concepts. Additionally, the borrower is in conversations with the adjacent public parking facility to establish a potential long term parking agreement.

**Sponsor:** Oxberry Group is a Houston based commercial and residential developer. As a regional real estate developer, Oxberry Group has the financial strength and experience to execute projects of various sizes and complexities. Since their inception, the firm's management has evolved to adapt to the industry's most fundamental and challenging axiom: real estate by nature is a very localized industry. Oxberry Group is a multidisciplined real estate company that allocates real estate capital and knowledge in contrarian investment cycles of product types and locales that may seem to be less favored by the market. The company has development expertise in office, industrial, mixed-use, and commercial land development. Developing a variety of commercial products in diverse markets, Oxberry Group is well versed in the complexities of design, construction, and budgeting of commercial real estate development. The principals, Sean and PJ Jamea, have a combined net worth in excess of $33mm.

| TRANSACTION SUMMARY | |
|---|---|
| **Development Cost** | **$32,969,600** |
| Per Unit | $181,152 |
| **Loan Request** | **$26,375,267** |
| Per Unit | $144,919 |
| Loan to Cost | 80.0% |
| **Net Rentable Area** | **101,818 SF** |
| **Units** | **182** |
| **Average Unit Size** | **559 SF** |
| **Average Rent Per Unit** | **$1,650** |
| **Sponsor** | **Oxberry Group** |
| **Loan Term** | **3 - 5 years** |
| **Year 3 NOI** | **$2,388,637** |
| **Year 3 Debt Yield** | **9.06%** |
| **Year 3 DSCR** | **1.29x** |
| **Exit Cap Rate** | **5.00%** |
| **Exit Value** | **$50,810,934** |
| Per Unit | $279,181 |
| **LTV (stabilized)** | **52%** |

Exhibit 6 Page 4 of 31



## Investment Highlights

- **Premium Midtown Location:** the property is located in the trendy midtown district, which is one of Houston's premiere dining and entertainment submarkets. It is also one of Houston's most active development corridors, creating high barriers to entry for future competitors.

    - **No Parking Requirements:** midtown does not have any parking requirements, which allows the sponsor to focus on developing a more efficient floor plan. The lack of onsite parking is offset by light rail access, walkability, and access to an adjacent public parking garage which is owned by the City of Houston.

    - **Rail Served:** the property is located along the light rail which provides convenient access to The CBD, The Texas Medical Center, Hermann Park NRG Stadium, The Ion and other transportation nodes.

    - **Innovation Corridor:** the property is strategically situated along the "Innovation Corridor". Anchored by The Ion, a recently completed 270,000 square foot innovation hub, the innovation corridor will span from downtown to the Texas Medical Center. Linked by light-rail, bike lanes, and sidewalks, the Innovation Corridor offers easy access to key industry and institutional players as well as an array of amenities to appeal to high-tech workers. Boston-based business accelerator MassChallenge committed to opening in downtown's GreenStreet. It aims to revolutionize Houston's burgeoning startup ecosystem by supporting entrepreneurs with a zero-equity, no-strings-attached model. The City of Houston and Houston Central are keen on bringing more tech-companies to the Innovation Corridor.

    - **$7B TXDOT Project:** Currently, I-45 (more specifically, the Pierce Elevated) serves as the dividing line between the CBD and Midtown, but the NHHIP's plans of re-routing I-45 alongside I-69 to the east of downtown will reconnect the two submarkets, repositioning the area as a destination public space. Demolishing the Pierce Elevated in its entirety would create a neighborhood chain of parks and green streetscapes along with new development sites in the existing highway right-of-way. The estimated $7 billion project holds the potential to stitch together the emerging communities at the southern edge of downtown and the northern edge of Midtown. Based on experience with other cities, they find that the positive economic impact of these projects' implementation can be as high as $10.0 billion.

- **Strong Sponsor:** Oxberry is an experienced real estate investor/developer based out of Houston, TX. They have been involved in over 36 hospitality, residential and commercial projects since inception, and remain very active in the midtown submarket.

- **Strong Loan Economics:** despite conservative underwriting assumptions, the project boasts strong loan economics with a 1.29x DSCR and 9.06% debt yield in year 3 of operations. Construction loan takeout out is supported by the project's low leverage refi potential once stabilized.

Exhibit 6 Page 5 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



**PROPERTY-LEVEL CASH FLOW**



| SOURCES | % | /Unit | Amount |
|---|---|---|---|
| Construction Loan | 80.0% | 144,919 | 26,375,267 |
| Mezzanine Loan | 0.0% | - | - |
| Oxberry Group | 20.0% | 36,233 | 6,594,333 |
| Oxberry Group | 0.0% | - | - |
| Total Sources | 100.0% | 181,152 | 32,969,600 |

| USES | % | /Rentable SF | /Unit | Amount |
|---|---|---|---|---|
| Land Costs | 25.1% | 81.32 | 45,494 | 8,279,980 |
| Hard Costs | 63.1% | 204.45 | 114,375 | 20,816,311 |
| Soft Costs | 5.0% | 16.25 | 9,089 | 1,654,155 |
| Carry Costs | 6.7% | 21.80 | 12,193 | 2,219,154 |
| Total Uses | 100.0% | 323.81 | 181,152 | 32,969,600 |



Exhibit 6 Page 6 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT





Exhibit 6 Page 7 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT





Exhibit 6 Page 8 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT





Exhibit 6 Page 9 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



# Demographics

## 2627 Main St

| PLACE OF WORK | 1 Mile | 3 Miles | 5 Miles |
|---|---|---|---|
| 2021 Businesses | 3,248 | 15,658 | 29,919 |
| 2021 Employees | 71,120 | 391,490 | 616,720 |

| POPULATION | | | |
|---|---|---|---|
| 2021 Population - Current Year Estimate | 27,983 | 203,385 | 475,564 |
| 2026 Population - Five Year Projection | 32,152 | 229,070 | 526,744 |
| 2010 Population - Census | 18,912 | 163,603 | 399,571 |
| 2000 Population - Census | 14,973 | 146,664 | 384,616 |
| 2010-2021 Annual Population Growth Rate | 3.54% | 1.95% | 1.56% |
| 2021-2026 Annual Population Growth Rate | 2.82% | 2.41% | 2.07% |

| HOUSEHOLDS | | | |
|---|---|---|---|
| 2021 Households - Current Year Estimate | 16,419 | 93,613 | 207,297 |
| 2026 Households - Five Year Projection | 19,098 | 107,647 | 233,110 |
| 2010 Households - Census | 10,546 | 71,102 | 167,772 |
| 2000 Households - Census | 6,960 | 58,397 | 150,700 |
| 2010-2021 Annual Household Growth Rate | 4.01% | 2.48% | 1.90% |
| 2021-2026 Annual Household Growth Rate | 3.07% | 2.83% | 2.37% |
| 2021 Average Household Size | 1.58 | 1.90 | 2.16 |
| 2021 Average Household Income | $106,373 | $123,815 | $119,172 |
| 2026 Average Household Income | $115,958 | $135,614 | $130,840 |
| 2021 Median Household Income | $76,614 | $79,899 | $71,452 |
| 2026 Median Household Income | $82,397 | $87,859 | $79,713 |
| 2021 Per Capita Income | $61,806 | $58,132 | $52,554 |
| 2026 Per Capita Income | $67,933 | $64,739 | $58,475 |

Exhibit 6 Page 10 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



# MIDTOWN — THE EPICENTER OF HOUSTON ACTIVITY



## MONTROSE

One of the major cultural areas in Houston known for its hipster culture, art and food scene and nightlife. The four-mile area is a pocket of eccentricity and diversity in the heart of the city.



## MUSEUM DISTRICT

Just southwest of downtown, in the pedestrian-friendly Museum District, more than 8.7 million visitors explore the 19 cultural institutions that make up the tree-lined, culture-filled neighborhood each year.



## TEXAS MEDICAL CENTER (TMC)

Comprised of over sixty medical institutions, the TMC is the largest medical complex in the world. The TMC has an extremely high density of clinical facilities for patient care, basic science and translational research, hosting 10 million patient encounters annually, and grossing $25 billion.



Exhibit 6 Page 11 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT







### RICE UNIVERSITY

A private research university adjacent to the TMC, this undergraduate-focused university is consistently recognized as a top 20 university in the United States. Rice University has also recently announced plans to increase its undergraduate enrollment by 20% over the next four years, in addition to enhancing campus facilities with new buildings for engineering, visual and dramatic arts, residences, and a student center.



### WEST UNIVERSITY

Located west of Rice University (also known as West U), is nicknamed "The Neighborhood City" and is mainly a bedroom community for upper-class families, housing lawyers and employees of Rice University and TMC. As of 2019, West University had a median  household income of $250,001, ranking among the highest in the state. In addition, 87% of adults living in West University have bachelor's degrees, making it the community with the highest percentage of adults with bachelor's degrees in the Southern United States.

Exhibit 6 Page 12 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## NEW DEVELOPMENTS CREATING HIGH BARRIERS TO ENTRY

**1** **The Pearl Marketplace & Whole Foods,** Morgan Group's 8-story multifamily and 40,000 grocery store (2019)

**2** **1810 Main,** Fairfield's 10-story multifamily tower (under construction)

**3** **Camden Downtown,** Camden's 21-story multifamily tower (2020)

**4** **The Travis at 3300 Main,** AECOM Capital and PM Realty Group's 30-story multifamily tower (2020)

**5** **2111 Austin Street,** Winther's 5-story multifamily project (2020)

**6** **Drewery Place,** Caydon's $200 million, 27-story multifamily tower (2019)

**7** **Camden McGowen Station,** Camden's 8-story multifamily project (2018)

**8** **Pearl at the Mix,** Morgan Group's 5-story multifamily project (2016)

**9** **Midtown Houston by Windsor,** TCR's 6-story multifamily project (2015)

**10** **Midtown Park** (2019)

**11** **Pearl Rosemont by Morgan Group,** 13-Story Multi-Family, 298 Units (under construction)

**12** **Skyhouse Apartments,** 674-unit multifamily complex, spanning 528,338 SF across two 24-story residential towers



## OVER $1 BILLION OF RECENT DEVELOPMENT ACTIVITY IN THE AREA

Exhibit 6 Page 13 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## INNOVATION CORRIDOR

The former Sears building, just blocks from Midtown Assemblage, is now known as The Ion. Rice University started its $100 million renovation of the 270,000 square foot building in May 2019. It will form the heart of Houston's new four-mile-long innovation corridor, that will span from downtown to the Texas Medical Center. Linked by light-rail, bike lanes, and sidewalks, the Innovation Corridor offers easy access to key industry and institutional players as well as an array of amenities to appeal to high-tech workers. Boston-based business accelerator MassChallenge committed to opening in downtown's GreenStreet. It aims to revolutionize Houston's burgeoning startup ecosystem by supporting entrepreneurs with a zero-equity, no-strings-attached model. The City of Houston and Houston Central are keen on bringing more tech-companies to the Innovation Corridor.



The Ion

Exhibit 6 Page 14 of 31


## $7.0B TXDOT PROJECT WILL UNITE MIDTOWN & DOWNTOWN

The North Houston Highway Improvement Project (NHHIP), also known as the "I-45 Project," is one of the biggest transportation infrastructure undertakings the city has seen since the freeway was first constructed. Currently, I-45 (more specifically, the Pierce Elevated) serves as the dividing line between the CBD and Midtown, but the NHHIP's plans of re-routing I-45 alongside I-69 to the east of downtown will reconnect the two submarkets, repositioning the area as a destination public space. Demolishing the Pierce Elevated in its entirety would create a neighborhood chain of parks and green streetscapes along with new development sites in the existing highway right-of-way.

The estimated $7 billion project holds the potential to stitch together the emerging communities at the southern edge of downtown and the northern edge of Midtown. Based on experience with other cities, they find that the positive economic impact of these projects' implementation be as high as $10.0 billion.



Exhibit 6 Page 15 of 31



## Unit Mix

| Unit Type | # | SF | Sonder Rent | $/SF | Monthly | Annual |
|---|---|---|---|---|---|---|
| A1 | 100 | 513 | $1,513 | $2.95 | $151,335 | $1,816,020 |
| A2 | 1 | 500 | $1,475 | $2.95 | $1,475 | $17,700 |
| A3 | 18 | 548 | $1,617 | $2.95 | $29,099 | $349,186 |
| A4 | 40 | 574 | $1,693 | $2.95 | $67,732 | $812,784 |
| A5 | 10 | 640 | $1,888 | $2.95 | $18,880 | $226,560 |
| B1 | 4 | 934 | $2,755 | $2.95 | $11,021 | $132,254 |
| B2 | 4 | 817 | $2,410 | $2.95 | $9,641 | $115,687 |
| B3 | 4 | 780 | $2,301 | $2.95 | $9,204 | $110,448 |
| B4 | 1 | 670 | $1,977 | $2.95 | $1,977 | $23,718 |
| **1 BR Units** | **182** | **559** | **$1,650** | **$2.95** | **$300,363** | **$3,604,357** |
| **Total / Avg** | **182** | **559** | **$1,650** | **$2.95** | **$300,363.10** | **$3,604,357** |

Exhibit 6 Page 16 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



# Loan Analysis

**Oxberry Midtown**
**Houston,TX**

**Loan Analysis**

| | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|
| CBRE Pro Forma Net Operating Income | $512,956 | $2,330,727 | $2,388,637 | $2,452,830 |
| | | | | |
| Reversion Value | $50,810,934 | $50,810,934 | $50,810,934 | $50,810,934 |
|     Implied Capitalization Rate | 1.01% | 4.59% | 4.70% | 4.83% |
|     Per Square Foot | $499 | $499 | $499 | $499 |
|     Per Unit | $279,181 | $279,181 | $279,181 | $279,181 |
| | | | | |
| Development Cost | $32,969,600 | $32,969,600 | $32,969,600 | $32,969,600 |
| | | | | |
| **Loan Request** | **$26,375,267** | **$26,375,267** | **$26,375,267** | **$26,375,267** |
|     Per Square Foot | $259 | $259 | $259 | $259 |
|     Per Unit | $144,919 | $144,919 | $144,919 | $144,919 |
|     LTV | 52% | 52% | 52% | 52% |
|     LTC | 80% | 80% | 80% | 80% |
| | | | | |
| Term | 5 - 10 years | 5 - 10 years | 5 - 10 years | 5 - 10 years |
| Interest Rate Type | Fixed/Floating | Fixed/Floating | Fixed/Floating | Fixed/Floating |
| Interest Rate | 7.00% | 7.00% | 7.00% | 7.00% |
| | | | | |
| Requested Amortization | 30 years | 30 years | 30 years | 30 years |
| Monthly Debt Service | ($175,475) | ($175,475) | ($175,475) | ($175,475) |
| Annual Debt Service | ($2,105,704) | ($2,105,704) | ($2,105,704) | ($2,105,704) |
| DSCR | 0.24x | 1.11x | 1.13x | 1.16x |
| | | | | |
| Requested Amortization | IO | IO | IO | IO |
| Monthly Debt Service | ($153,856) | ($153,856) | ($153,856) | ($153,856) |
| Annual Debt Service | ($1,846,269) | ($1,846,269) | ($1,846,269) | ($1,846,269) |
| DSCR | 0.28x | 1.26x | 1.29x | 1.33x |
| | | | | |
| Debt Yield | 1.94% | 8.84% | 9.06% | 9.30% |

Exhibit 6 Page 17 of 31



# Operating Pro Forma

| 2627 MAIN | | | | | | | OXBERRY GROUP |
|---|---|---|---|---|---|---|---|
| Houston, TX | | | | | | | ANALYSIS START - OCT-2022 |
| ANNUAL CASH FLOW | | | | | | | |
| | Analysis Year | Year 0 | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
| | Period Ending | Sep-2022 | Sep-2023 | Sep-2024 | Sep-2025 | Sep-2026 | Sep-2027 |
| **ANNUAL DEVELOPMENT CASH FLOWS** | | | | | | | |
| Land Costs | | 8,279,980 | - | - | - | - | - |
| Hard Costs | | - | 20,369,631 | 446,680 | - | - | - |
| Soft Costs | | 706,656 | 812,142 | 135,357 | - | - | - |
| TOTAL PROJECT COST BEFORE FINANCING | | 8,986,636 | 21,181,773 | 582,037 | - | - | - |
| Carry Costs | | 263,753 | 651,287 | 1,304,115 | - | - | - |
| TOTAL PROJECT COST | | 9,250,388 | 21,833,060 | 1,886,152 | - | - | - |
| SOURCES | | 9,250,388 | 21,833,060 | 1,886,152 | - | - | - |
| USES | | 9,250,388 | 21,833,060 | 1,886,152 | - | - | - |
| | | | | | | | |
| **ANNUAL OPERATING CASH FLOWS** | | | | | | | |
| Rental Income | | - | - | 1,388,767 | 3,566,333 | 3,755,684 | 3,868,354 |
| Other Income | | - | - | 142,562 | 369,939 | 389,675 | 401,365 |
| Retail Income (Net of Expenses) | | - | - | - | - | - | - |
| TOTAL POTENTIAL INCOME | | - | - | 1,531,329 | 3,936,272 | 4,145,359 | 4,269,719 |
| - General Vacancy and Credit Loss | | - | - | (76,566) | (196,814) | (207,268) | (213,486) |
| EFFECTIVE GROSS REVENUE | | - | - | 1,454,762 | 3,739,459 | 3,938,091 | 4,056,233 |
| | | | | | | | |
| OPERATING EXPENSES | | | | | | | |
| Repairs and Maintenance | | - | - | 109,200 | 147,238 | 149,447 | 151,688 |
| Payroll | | - | - | 155,220 | 209,288 | 212,428 | 215,614 |
| General & Administrative | | - | - | 54,600 | 73,619 | 74,723 | 75,844 |
| Marketing | | - | - | 9,373 | 12,638 | 12,828 | 13,020 |
| Utilities | | - | - | 211,575 | 285,274 | 289,553 | 293,896 |
| Contract Services | | - | - | 61,425 | 82,821 | 84,064 | 85,325 |
| Make Ready Cost | | - | - | 68,250 | 92,024 | 93,404 | 94,805 |
| Management Fee | | - | - | 43,643 | 112,184 | 118,143 | 121,687 |
| Insurance | | - | - | 60,000 | 80,900 | 82,114 | 83,345 |
| Property Taxes | | - | - | 168,521 | 312,746 | 432,752 | 468,179 |
| TOTAL OPERATING EXPENSES | | - | - | 941,806 | 1,408,732 | 1,549,454 | 1,603,404 |
| | | | | | | | |
| NET OPERATING INCOME | | - | - | 512,956 | 2,330,727 | 2,388,637 | 2,452,830 |
| | | | | | | | |
| CAPITAL EXPENDITURES | | - | - | 14,025 | 35,985 | 37,362 | 37,922 |
| | | | | | | | |
| CASH FLOW FROM OPERATIONS | | - | - | 498,931 | 2,294,742 | 2,351,275 | 2,414,908 |
| | | | | | | | |
| **ANNUAL PROPERTY-LEVEL CASH FLOWS** | | | | | | | |
| | | | | | | | |
| Net Unlevered Cash Flow | | (8,986,636) | (21,181,773) | (83,106) | 2,294,742 | 2,351,275 | 52,463,678 |
| Net Levered Cash Flow | | (6,594,333) | - | (0) | 448,474 | 567,864 | 24,546,129 |

Exhibit 6 Page 18 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## Sources & Uses

| SOURCES AND USES OF FUNDS | | | | |
|---|---|---|---|---|
| **Sources of Funds** | **Amount** | **$/Unit** | **$/NRSF** | **% of Total** |
| Construction Loan | $26,375,267 | $144,919 | $259.04 | 80% |
| Sponsor Equity | | | | |
| JV Equity | | | | |
| Total Equity | $6,594,333 | $36,233 | $64.77 | 20% |
| **Total Sources of Funds** | **$32,969,600** | **$181,152** | **$323.81** | **100%** |
| | | | | |
| **Uses of Funds** | **Amount** | **$/Unit** | **$/NRSF** | **Total** |
| Land Acquisition | $8,279,980 | $45,494 | $81.32 | 25.1% |
| GC, PR, Insurance, Bonds | $1,145,600 | $6,295 | $11.25 | 3.5% |
| Earthwork and Site Improvements | $2,254,756 | $12,389 | $22.14 | 6.8% |
| Concrete | $881,211 | $4,842 | $8.65 | 2.7% |
| Masonry | $851,175 | $4,677 | $8.36 | 2.6% |
| Metals | $283,067 | $1,555 | $2.78 | 0.9% |
| Wood Framing & Millwork | $6,690,958 | $36,764 | $65.71 | 20.3% |
| Moisture Control & Metal Panels | $613,686 | $3,372 | $6.03 | 1.9% |
| Openings | $538,517 | $2,959 | $5.29 | 1.6% |
| Finishes | $1,985,282 | $10,908 | $19.50 | 6.0% |
| Appliance & Window | $661,500 | $3,635 | $6.50 | 2.0% |
| Elevator | $380,000 | $2,088 | $3.73 | 1.2% |
| Fire Protection & Plumbing | $2,142,238 | $11,771 | $21.04 | 6.5% |
| Electrical | $1,592,838 | $8,752 | $15.64 | 4.8% |
| Low Voltage Systems | $387,049 | $2,127 | $3.80 | 1.2% |
| Construction Fee | $850,000 | $4,670 | $8.35 | 2.6% |
| Permit | $54,166 | $298 | $0.53 | 0.2% |
| Property Tax | $100,000 | $549 | $0.98 | 0.3% |
| Contingency Fee | $649,989 | $3,571 | $6.38 | 2.0% |
| Capitalized Construction Interest | $1,926,815 | $10,587 | $18.92 | 5.8% |
| Financing Fees | $263,753 | $1,449 | $2.59 | 0.8% |
| Operating Shortfall | $28,587 | $157 | $0.28 | 0.1% |
| **Total Uses of Funds** | **$32,969,600** | **$181,152** | **$323.81** | **100%** |

Exhibit 6 Page 19 of 31



# Site Plan



Exhibit 6 Page 20 of 31



# Unit Presentation



UNIT A1
(TYP. UNIT)



UNIT A1
(ALT.)



UNIT A2



UNIT B1



UNIT B2



UNIT B3



UNIT B4

Exhibit 6 Page 21 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## Market



Exhibit 6 Page 22 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT





## WHY HOUSTON

### LEADING POPULATION GROWTH

**±7.2 Million**
Current Residents in the Houston MSA
Fifth-Largest MSA in the U.S - 1.2M Population
Growth between 2010-2020

**Fastest-Growing MSA**
Between 2010-2020

**Projected 5yr net migration for Houston:**
+68,000 People Each Year
186 Net Gained Residents Every Day!

### PROJECTED POPULATION GROWTH: 2020-2025

| RANK | MSA | NEW RESIDENTS |
|------|-----|---------------|
| 1 | Houston | 601,130 |
| 2 | DFW | 530,930 |
| 3 | Phoenix | 447,740 |
| 4 | Atlanta | 354,220 |
| 5 | Washington, DC | 336,940 |

Source: US Census Bureau

**Moody's projects that Houston will rank second nationwide in population growth over the next five years, adding more than 458 new residents each day.**

### HOUSTON POPULATION GROWTH



Source: Oxford Economics, January 2020

### TOP ANNUAL POPULATION GROWTH

Source: Oxford Economics, January 2020

Exhibit 6 Page 23 of 31

**2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT**



**Houston Economy**

- 4th largest MSA in the US with 7.1 million people.
- Out of Houston's nine counties, Harris County has the highest percentage of renters, at 45.3%.
- Twenty-one Fortune 500 companies call Houston home.
- Despite being known as 'The Energy Capital of the World', Houston boasts an increasingly diversified employment base.
- Houston's Texas Medical Center (TMC) is the world's largest medical complex.
- Houston is a national leader in population growth (second only to Dallas), adding 125,000 net new residents each year
- Houston is consistently one of the top destinations for corporate location, relocation and expansion
- Low cost of living, business-friendly environment, and a skilled workforce are the primary draws for new business
- In addition to our diversity as a community, Houston offers a well-developed suite of key global industries – including energy, life science, manufacturing, logistics and aerospace. As these industries digitize, Houston is a hotbed of rapid technological development thanks to our access to customers and expertise.
- Houston has one of the youngest, fastest-growing and most diverse populations anywhere in the world. One in four of the region's 7 million residents is foreign born. From 2010 to 2018, Houston added 1.1 million new residents, an 18.2 percent increase, the fastest rate of population growth among the 10 most populous U.S. Metros.
- Nearly 1 in 4 Houstonians are foreign born.



**Industry Share of Houston MSA Employment**

| | |
|---|---|
| 21% | Trade, Transportation, and Utilities |
| 17% | Professional and Business Services |
| 14% | Government |
| 13% | Educational and Health Services |
| 10% | Leisure and Hospitality |
| 9% | Mining, Logging and Construction |
| 7% | Manufacturing |
| 5% | Finance and Insurance |
| 1% | Information |
| 3% | Other Services |

Source: Texas Workforce Commission



**Metro Houston - '01-'19 real GDP** ($ billions '12 constant dollars)

Source: Bureau of Economic Analysis

| 4th | 1.1 Million | $490 | 350,000 | 760+ |
|---|---|---|---|---|
| Largest U.S. City | New Residents in Last Decade | Billion Regional GDP | Educated Millennials | Expansion and Relocation Projects in Last 2 Years |

Exhibit 6 Page 24 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## Houston MF Market - Occupancy & Absorption Analysis



## Houston MF Market - Absorption & Job Growth



Exhibit 6 Page 25 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## Midtown Submarket

| Stable vs Lease-Up Communities | | | | | | |
|---|---|---|---|---|---|---|
| | Class A | Stable | Lease-Up | Class B | Stable | Lease-Up |
| # of Apartments | 56 | 50 | 6 | 12 | 12 | 0 |
| # of Units | 15,444 | 13,188 | 2,256 | 2,368 | 2,368 | 0 |
| Size (sf) | 936 | 944 | 886 | 895 | 895 | 0 |
| Price ($/mo) | 2,004 | 1,985 | 2,113 | 1,335 | 1,335 | 0 |
| Rental Rate ($/sf/mo) | 2.14 | 2.10 | 2.38 | 1.49 | 1.49 | 0.00 |
| Occupancy | 83.9% | 93.6% | 27.6% | 95.3% | 95.3% | 0.0% |

| Floorplans (ALL) | | | | | |
|---|---|---|---|---|---|
| | Total | Class A | Class B | Class C | Class D |
| # of Apartments | 72 | 56 | 12 | 3 | 1 |
| # of Units | 18,010 | 15,444 | 2,368 | 98 | 100 |
| Size (sf) | 929 | 936 | 895 | 570 | 1,005 |
| Price ($/mo) | 1,902 | 2,004 | 1,335 | 790 | 721 |
| Rental Rate ($/sf/mo) | 2.05 | 2.14 | 1.49 | 1.39 | 0.72 |
| Occupancy | 85.5% | 83.9% | 95.3% | 96.9% | 92.0% |

This table shows statistics for the ALL units in the market. Along with the totals, the table displays the information by Class (A,B,C and D).
Prices and rental rates are displayed as effective - net of concessions and electric utility adjustments.

## Total History

### Effective Rental Price & Occupancy



Exhibit 6 Page 26 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## Rent Comps

| # | Property | Address | NRA | Avg Unit Size | Year Built | Units | Unit Rent |
|---|----------|---------|-----|---------------|------------|-------|-----------|
| 1 | Encore Montrose | 4508 Graustark St | 167,748 | 795 | 2018 | 211 | $1,829 |
| 2 | City Place Midtown | 2700 Brazos St | 90,315 | 746 | 2014 | 121 | $1,710 |
| 3 | Pearl Midtown | 3120 Smith St | 194,434 | 736 | 2019 | 264 | $1,901 |
| 4 | Vic at Interpose | 1111 Shepherd Dr | 85,337 | 508 | 2021 | 168 | $1,565 |
| 5 | Avondale Highline | 214 Avondale St | 31,327 | 627 | 2020 | 50 | $1,423 |
| Avg | | | 113,832 | 682 | 2018 | 163 | $1,686 |
| Subject | | | 101,818 | 559 | 2023 | 182 | $1,650 |



Exhibit 6 Page 27 of 31



## Sale Comps

| # | Property | Address | Year Built | Occ | Units | Price | Price Per Unit |
|---|----------|---------|-----------|-----|-------|-------|----------------|
| 1 | Venue at Museum District | 5353 Fannin | 2010 | 92% | 224 | $76,000,000 | $339,286 |
| 2 | 1711 Caroline | 1711 Caroline | 2017 | 95% | 220 | $51,250,000 | $232,955 |
| 3 | Heights at Waterworks | 515 W 20th St | 2020 | 95% | 309 | $87,900,000 | $284,466 |
| 4 | 27Seventy Lower Heights | 2770 Summer St | 2020 | 100% | 375 | $110,000,000 | $293,333 |
| 5 | Eighteen25 | 1825 San Jacinto St | 2015 | 84% | 242 | $59,570,000 | $246,157 |
| 6 | Montrose at Buffalo Bayou | 1320 Montrose Blvd | 2019 | 84% | 224 | $73,920,000 | $330,000 |
| Avg | | | 2017 | 92% | 266 | $76,440,000 | $287,729 |
| Subject | | 2627 Main St | 2023 | | 182 | $50,810,934 | $279,181 |



Exhibit 6 Page 28 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## Land Comps

| # | Site | Address | Land Area (SF) | Land Area (AC) | Date of Sale | Purchase Price | PSF |
|---|------|---------|----------------|----------------|--------------|----------------|-----|
| S | Oxberry Midtown | 2627 Main St | 40,991 | 0.94 | UC | $8,189,280 | $200 |
| 1 | 3117 D'Amico | 3117 D'Amico | 64,341 | 1.48 | 12/22/2020 | $13,511,610 | $210 |
| 2 | 101 Westheimer | 101 Westheimer | 124,599 | 2.86 | 8/3/2020 | $27,000,000 | $217 |
| 3 | 1001 Westheimer | 1001 Westheimer | 124,835 | 2.87 | 8/1/2020 | $27,000,000 | $216 |
| 4 | 2505 fannin | 2505 Fannin | 49,658 | 1.14 | 2022 | $10,179,972 | $205 |



Exhibit 6 Page 29 of 31

2627 MAIN :: CLASS A MULTIFAMILY DEVELOPMENT



## Sponsor



Oxberry Group believes successful commercial real estate investing requires an integrated team approach based on experience, transparency, and thorough analysis. The Firm's goal is to apply disciplined analytical procedures to create investment strategies that meet the highest criteria and invest in real estate assets that have the potential to expand value, maximize returns, and minimize risk.

Oxberry's comprehensive depth of experience guides every stage of development from start to finish. Their extensive knowledge is incorporated into all aspects of strategy development, target market selection, underwriting acquisitions, effective marketing strategies, and hold or sell decisions.

Since inception, Oxberry has been involved in over 36 hospitality, residential and commercial projects.

**COLLABORATION**
In addition to forward-thinking lenders and investors who are equally committed to Houston's future, we have created exceptional in-house leadership and partner with leading professionals.

**PARTNERSHIP**
Oxberry Group principals Pejman (PJ) and Shahin (Sean) Jamea appreciate the soul and intricacies of Houston's Inner Loop. A strong partnership, forged between brothers, draws on a family history of urban living and the strengths each brings to the table— PJ's expertise in design and architecture, and Sean's proficiency in real estate law and finance. Sean and PJ find balance in their chemistry and differences.

**PERSPECTIVE**
A broad educational base lends the partners exceptional perspective. PJ has degrees in interior design and architecture. Sean's education is business and law, which he describes as transformative. Sean states, "Bringing a group together and positioning debt and equity is 80 percent law. But more than brokering a deal, we're creating something that will be here generations from now."



**Shahin "Sean" Jamea**
President

Sean serves as president and general counsel of Oxberry Group and oversees the financial direction of the firm. He is a graduate of University of Houston where he received his undergraduate degrees in Economics and Political Science and his JD. He is licensed to practice law before the Texas Supreme Court and the United States Supreme Court.

Sean has organized many limited partnerships and other entities primarily engaged in the acquisition, ownership, transfer, development, financing, and operation of real estate and improvements.

Affiliations:
• Texas Bar Association
• Urban Land Institute
• TREC

**Pejman "PJ" Jamea**
Principal

PJ received his Bachelor's degree in Architecture from Florida A&M University. With ten years of experience working for some of the most established architecture firms such as Morris Architects and the Wilson Architectural Group.

Highly trained in his field, PJ has designed and developed a variety of different projects. His past projects include the redevelopment of Adams Street Tallahassee, FL; Planet Hollywood in Key West, FL; Emeralds Restaurant in City Walk Universal in Orlando, FL; and Children's Assessment Center in Houston, TX.

PJ has been awarded the AIA's award of excellence for his work. He is in charge of planning, designing and overseeing the construction of the firm's projects.

Affiliations:
• AIA
• NCARB
• TREC

Exhibit 6 Page 30 of 31

# DEBT & STRUCTURED FINANCE CONTACTS:

:: **Jeff Stein**
Executive Vice President
713.787.1906
jeff.stein@cbre.com

:: **Michael Thompson**
Vice Chairman
713.787.1926
michael.thompson3@cbre.com

:: **Brock Hudson**
Vice President
713.787.1942
brock.hudson@cbre.com

©2021 CBRE, Inc. This information has been obtained from sources believed reliable. We have not verified it and make no guarantee, warranty or representation about it. Any projections, opinions, assumptions or estimates used are for example only and do not represent the current or future performance of the property. You and your advisors should conduct a careful, independent investigation of the property to determine to your satisfaction the suitability of the property for your needs. This Presentation is intended solely as a preliminary expression of general intentions and is to be used for discussion purposes only. The Recipient acknowledges that no obligation is assumed or implied by or between CBRE, Inc., its client(s) and/or affiliated sponsoring entities with respect to any matters identified herein unless and until a definitive agreement has been fully executed and delivered by and between these parties and the Recipient. Recipient further acknowledges that this Presentation is not intended to create any agreement or obligation to negotiate a definitive agreement and imposes no duty whatsoever on any party to commence or continue negotiations with Recipient, including without limitation any obligation to negotiate in good faith or in any way other than at arm's length. At any time prior to delivery of a definitive executed agreement, and without any liability, any party or the Recipient may (1) propose different terms from those summarized herein, (2) enter into and maintain concurrent negotiations with other undisclosed parties and/or (3) unilaterally terminate all negotiations.



Exhibit 6 Page 31 of 31

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KH-REIT II FUNDING XXII, L.L.C., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:22-CV-3730 |
| | § | |
| GRANT MEADOWS, LLC and SHAHIN | § | |
| JAMEA, | § | |
| *Defendants.* | § | |

### AFFIDAVIT OF MATTHEW BAUMGARTNER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant, who, being by me duly sworn, upon his oath, stated:

1.      "My name is Matthew Baumgartner.  I am over eighteen (18) years of age, and I have never been convicted of a felony.  I am of sound mind, capable of making this affidavit, and am fully competent to testify to the matters stated herein.  I have personal knowledge of the matters stated herein, and the matters stated herein are true and correct.

2.      "This Affidavit is being submitted in support of KH-REIT II Funding XXII, L.L.C.'s request for discovery sanctions.

3.      "I am a licensed attorney in good standing in the State of Texas.  I have been licensed to practice law since 2005, and I am a member of the law firm of Armbrust & Brown, PLLC ('A&B').  For all of that time my practice has been focused on civil litigation, including real estate litigation.  I am the attorney at A&B primarily responsible for representing the Plaintiff in the above-styled Lawsuit, and I have personal knowledge of the services provided by A&B to

Exhibit 7 Page 1 of 7

Plaintiff in the above-styled Lawsuit.  In this litigation, I have been assisted by my colleague, Guillermo A. Alarcon, who has been licensed to practice law since 2016.

4.      "I am familiar with the fees customarily charged by lawyers in Harris County, Texas for services similar to the above-styled Lawsuit.

5.      "Since April 2023, I and Mr. Alarcon have spent a significant amount of time trying to get Defendants to comply with their discovery obligations.  Our efforts, and the time spent on those efforts, are summarized in the attached billing statements.

6.      "On August 31, 2023, Plaintiffs filed their first motion to compel and for discovery sanctions. Through August 31, 2023, I had spent 11.4 hours conferring with opposing counsel and preparing Plaintiff's first motion to compel. My hourly rate in 2023 was $535.  Mr. Alarcon had spent 52.6 hours conferring with opposing counsel, preparing for and taking Shahin Jamea's first deposition, and preparing Plaintiff's first motion to compel. Mr. Alarcon's hourly rate in 2023 was $390.  It is my opinion that the time spent by Mr. Alarcon and myself for those discovery matters were reasonable and necessary. It is also my opinion that the hourly rates charged by Mr. Alarcon and myself are reasonable and in line with attorneys that have our experience and qualifications.  At the time of the first motion to compel, Plaintiff had spent $26,613 attempting to get Defendant to comply with its discovery obligations.  It is my opinion that the time expended for these services, the hourly rates charged, and the total fees charged were and are reasonable and necessary.

7.      "I attached to Plaintiff's first motion to compel and for discovery sanctions a redacted copy of A&B's time entries and the associated fees charged for the discovery matters described herein—i.e., the time and fees incurred in attempting for many months to obtain Grant Meadows' voluntary compliance with its discovery obligations.  The time entries were produced

2

from A&B's electronic files which are made and kept in the regular course of A&B's business; they reflect time entries record at the time of the events by myself and Mr. Alarcon; and, they are true and correct copies of those contemporaneously recorded events.

8.      "After the Court granted Plaintiff's first motion to compel, Defendants' discovery conduct did not improve. Defendants' failure to produce relevant documents forced Plaintiff to file a second motion to compel, which is being filed on February 5, 2024. For 2024, my hourly rate was increased to $585 and Mr. Alarcon's hourly rate was increased to $425. Through February 4, 2024, I have spent 2.2 hours drafting Plaintiff's second motion to compel and otherwise spending time on Defendants' failure to produce relevant documents. Mr. Alarcon has spent 13.9 hours drafting Plaintiff's second motion to compel and corresponding with Defendants regarding their discovery failure.  It is my opinion that the time spent by Mr. Alarcon and myself for those discovery matters were reasonable and necessary.  It is also my opinion that the hourly rates charged by Mr. Alarcon and myself are reasonable and in line with attorneys that have our experience and qualifications.   Thus, Plaintiff has incurred an additional $7,195 attempting to get Defendants to comply with their discovery obligations.

9.      "I have attached to Plaintiff's second motion to compel and for discovery sanctions a redacted copy of A&B's time entries and the associated fees charged for the discovery matters described herein—i.e., the time and fees incurred in attempting for many months to obtain Grant Meadows' voluntary compliance with its discovery obligations.  The time entries were produced from A&B's electronic files which are made and kept in the regular course of A&B's business; they reflect time entries record at the time of the events by myself and Mr. Alarcon; and, they are true and correct copies of those contemporaneously recorded events.

3

Exhibit 7 Page 3 of 7

10.    "In determining the reasonableness and necessity of the attorneys' fees of Plaintiff in connection with this matter, I have considered the following factors as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974), *abrogated on other grounds as stated in Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989):

    a.    The time and labor required;

    b.    The novelty and difficulty of the questions;

    c.    The skill requisite to perform the legal services properly;

    d.    The preclusion of other employment by the attorney due to acceptance of the case;

    e.    The customary fee;

    f.    Whether the fee is fixed, contingent, or hourly;

    g.    Time limitations imposed by the client or circumstances;

    h.    The amount involved; and

    i.    The experience, reputation, and ability of the attorneys."

FURTHER AFFIANT SAYETH NAUGHT.

*[signature]*

Matthew Baumgartner

SUBSCRIBED TO AND SWORN TO before me on this 5ᵗʰ day of FEBRUARY 2024.

*[signature]*

Notary Public, State of Texas

MARTHA ANN ADAMS
Notary Public, State of Texas
Notary ID# 267719-7
My Commission Expires
JANUARY 30, 2025

4

Exhibit 7 Page 4 of 7

For Invoice Date: 2/5/2024
Page #:  1

| | Action |
|---|---|
| Bill ____ Hold ____ W/U/D____W/O____ | |
| Apply Retainer Trust _____REDO___ | |
| Show to _____ | |
| Close Matter_____AddAttached_____ | |

049115    000101    KH-REIT II FUNDING XXII, LLC
                    KH-REIT II FUNDING XXII, LLC
                    ██████████████████████████
                    █

                    ATTN:

Matter Name:  2701 MAIN STREET (HOUSTON)

Responsible: ████████████████████         Fees from - through:           - 2/5/2024
Originating: ███████████                   Other Accounting from - through:  - 2/5/2024
Fee Arrangement: Hourly                     Type of Law: 105
Matter Opened on: 10/26/2022                Quoted Price: $0.00
Invoice Style: A2 - Armbrust- Hrs, Atty, and Amt in Fees(w/PerRecap)   Default Rate: 001
☒ Include Invoice in Hard Copy

Billing Notes:
Matter Description:

### Fees

| Date | ID | Description | Orig Hrs | | Orig Amt |
|---|---|---|---|---|---|
| Record # | | Description | Bill Hrs | Hrly Rate | Bill Amt |
| ████████ | | ██████████████████████████ | ██ | ██ | ████ |
| ███ | | | ██ | | ████ |
| ████████ | | ██████████████████████████ | ██ | ██ | ████ |
| ███ | | | ██ | | ████ |
| ████████ | | ██████████████████████████ | ██ | ██ | ████ |
| ███ | | | ██ | | ████ |
| ████████ | | ████████████████████████████████ | ██ | ██ | ████ |
| ███ | | | ██ | | ████ |
| ████████ | | █████████████████████████████ | ██ | ██ | ████ |
| ███ | | | ██ | | ████ |
| ████████ | | ███████████████████████████████ | ██ | ██ | ████ |
| 1/22/2024 | GAA | ████████████████████████; draft motion for discovery sanctions; | 3.9 | | $1,657.50 |
| 1540863 | | ███████████████████████ | 3.9 | $425.00 | $1,657.50 |
| 1/23/2024 | MBB | Attention to sanctions letter to opposing counsel, and fees and costs for deposition to be paid by Grant Meadows. | 0.2 | | $117.00 |
| 1541281 | | | 0.2 | $585.00 | $117.00 |
| 1/23/2024 | GAA | Draft motion for discovery sanctions; email to opposing counsel regarding scheduling order; draft letter to opposing counsel regarding payment of sanctions. | 3.2 | | $1,360.00 |
| 1541447 | | | 3.2 | $425.00 | $1,360.00 |
| 1/24/2024 | MBB | Work on second motion for sanctions and discuss same with G. Alarcon. | 0.9 | | $526.50 |
| 1541952 | | | 0.9 | $585.00 | $526.50 |
| | | | | *Edited* | |
| 1/24/2024 | GAA | Draft motion to compel and for discovery sanctions. | 3.5 | | $1,487.50 |
| 1541452 | | | 3.5 | $425.00 | $1,487.50 |
| ████████ | | █████████████████████████████████ | ██ | ██ | ████ |
| ███ | | ███████████████████████████ | ██ | ██ | ████ |

Exhibit 7 Page 5 of 7

For Invoice Date: 2/5/2024
Page #:   2

049115    000101    KH-REIT II FUNDING XXII, LLC
Matter Name:   2701 MAIN STREET (HOUSTON)

### Fees

| Date | ID | Description | Orig Hrs | | Orig Amt |
|------|-----|-------------|----------|----------|----------|
| Record # | | Description | Bill Hrs | Hrly Rate | Bill Amt |
| 2/2/2024 | MBB | Attention to opposing counsel supplemental production email and revise motion for sanctions to account for same. | 1.1 | | $643.50 |
| 1544407 | | | 1.1 | $585.00 | $643.50 |
| 2/4/2024 | GAA | Finalize motion to compel; compile exhibits for same; ▮▮▮▮▮ | 3.3 | | $1,402.50 |
| 1544351 | | ▮▮▮▮▮ | 3.3 | $425.00 | $1,402.50 |



### Cost & Expenses

| Date | ID | | | Orig Amt |
|------|-----|------|------|----------|
| Record # | Code | Description | | Bill Amt |

<span style="color:red">Exhibit 7 Page 6 of 7</span>

For Invoice Date: 2/5/2024
Page #:  3

049115    000101    KH-REIT II FUNDING XXII, LLC
Matter Name:  2701 MAIN STREET (HOUSTON)

## Invoice Totals

|  | Orig Amt | Bill Amt |
|---|---|---|
|  | █████ 0 | █████ |
|  | █████ | █████ |
|  | █████ | █████ |
|  | $0.00 | █████ |
|  | █████ | █████ |

| Retainer Balance | $0.00 | Retainer Amount to Apply | _____ |
|---|---|---|---|
| Trust Balance | $0.00 | Trust Amount to Apply | _____ |
|  |  | Total Due After Application | _____ |

## Timekeeper Recap

| ID | Name | Orig Hours | Original Amount | Billed Hours | Billed Rate | Billed Amount | % of Total | Real-ization | Notes |
|---|---|---|---|---|---|---|---|---|---|
| ███ | ████████ | ████ | ████████ | ████ | ████ | ████████ | ████ | ████ |  |
|  |  |  |  |  |  |  | ████ |  |  |

## Email Recipients

| Defined On | Type | Name | Email |
|---|---|---|---|
| Matter | To | ████████ | ████████ |

Exhibit 7 Page 7 of 7