IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KH REIT II FUNDING XXII, LLC, § | | |
|     *Plaintiff*, § | | |
| § | | |
| v. § | | Case No. 4:22-cv-03730 |
| § | | |
| GRANT MEADOWS, LLC, § | | |
|     *Defendant*. § | | |
| § | | |
| *and* § | | |
| § | | |
| FIDELITY NATIONAL TITLE § | | |
| INSURANCE COMPANY, § | | |
|     *Third-Party Interpleader*, § | | |
| § | | |
| v. § | | |
| § | | |
| KH REIT II FUNDING XXII, LLC, and § | | |
| GRANT MEADOWS, LLC, § | | |
|     *Third-Party Defendants*. § | | |

## **GRANT MEADOWS, LLC's SUR-REPLY TO 2nd MOTION TO COMPEL [35] & [41]**

Defendant GRANT MEADOWS, LLC ("**Grant Meadows**") files this Sur-Reply to Plaintiff's Reply ("**Reply**") in Support of [the] Second Motion to Compel ("**2nd Motion**") and for additional Discovery Sanctions in response to Plaintiff's apparent misstatements to clarify Grant Meadows' Response.[1]

The claims in this case concern the termination of a contract to sell a single once-developed now-a-parking-lot piece of property from a REIT owner to a single-purpose holding company. The potential subsequent build by a separate developer entity group is not a part of the subject

---

[1] Throughout the Reply and initially in the 2nd Motion, Plaintiff, KH REIT II Funding XII, LLC ("Plaintiff") has incorrectly addressed the responding party as the "Defendants." The asserted inadequate discovery responses complained of in the Plaintiff's first motion to compel, and which has been reiterated in the 2nd Motion, is document requests served on the defendant, Grant Meadows, and no other party, (or non-party). Plaintiff throughout the motion and in its legal position, refuses to acknowledge and accept the separate entity and individual defendants, and the separate corporate existence of entities parties and non-parties.

1

contract, nor relevant to any of the claims. Plaintiff ignores this distinction and improperly seeks discovery from the potential developer or its people about future development plans.

**OBJECTION TO UNCLEAR OR INACCURATE REFERENCES**

Grant Meadows objects to the apparent references to exhibits in the first discovery motion Plaintiff filed as not being part of the subject motion.

**1. Plaintiff's first contention in Reply is incorrect – No refusal to search for documents.**

Plaintiff's 1st bullet point initially contends that: "<u>Defendants have failed to search for or produce documents from several records custodians</u>." This is wrong. Grant Meadows has searched all of its records, and the records of its managers. Grant Meadows has specifically used an outside discovery service to make sure Grant Meadows has produced the response documents to the requests and as ordered by the court. These documents address the "red herring" power pole dispute.

An assertion, in a responsive document to a motion, that a party is not "required to produce documents from" a non-party third person, is not a statement that the responding party did not search for or produce documents from all sources over which it has direct custody and control. Grant Meadows has searched all sources over which it has direct custody and control. Plaintiff has not stated which "several records custodians" it is claiming were not searched. Defendant produced all responsive documents it has direct custody and control over related to emails where Espinoza was copied.

<u>A – Emails Espinosa an Oxberry employee</u>

Plaintiff contends that "Defendants do not dispute that Espinosa is subject to Defendants' control. Nor could they." This is wrong. Grant Meadows searched and produced its emails where

Espinoza (*who was not part of the purchase or closing*) was copied. [2] Grant Meadows specifically denies that Grant Meadows has any custody or control over the separate entity "Oxberry General, LLC"("**Oxberry**"). Grant Meadows has specifically disputed that Espinosa's Oxberry email documents are subject to Grant Meadows' custody and control. Plaintiff asserts, without any evidentiary support, that Oxberry "would have closed and developed the Property".

> "That is precisely what happened here—Defendant Grant Meadows held the contract to the Property but Oxberry (the actual entity that employs Jamea's people) would have closed and developed the Property (except that Grant Meadows failed to close)."

This is not fact, nor is it relevant to the claims in this case. As Plaintiff's summary judgment motion shows, the relevant facts in question surround the intent of the parties closing, their actions in potential breach, and the intent of the neighbor who asserted it would sue Plaintiff regarding an unrecorded easement.

Plaintiff leaps from one part of the deposition evidence: (a) that Grant Meadows is a holding company before another entity is formed to take an assignment of the contract and close, to (b) an assertion that Oxberry would be the one to buy the Property at closing (or create such entity). Even that jump in unsupported facts does not make Oxberry the closing party, or in contractual privity with Plaintiff. If Plaintiff contends otherwise and can assert a non-frivolous claim against Oxberry, it could have sued them. Plaintiff has no support for such a claim and has no support to collapse the corporate structure in order to obtain discovery from Oxberry by way of Grant Meadows.

Regardless, Grant Meadows has produced all emails it has located, and all those it obtained

---

[2] The subject emails copied, or sent, to Espinosa are to an "@oxberrygroup.com" suffix. As the uncontroverted email to Plaintiff's counsel indicates [attached by Plaintiff as Exhibit "3" to the 2nd Motion] (regardless of the elicited, but vague, response in the deposition of Jamea), Espinoza was an employee of Oxberry - a potential property developer. Plaintiff admits that in the 2nd Motion, but seeks to provide conflicting arguments. Plaintiff ignores or tries to confuse the commercial real estate development industry, that a party who may buy a property is not likely to be the party who develops the property in the future, after the subject property has closed, and after formal final development plans have been completed <u>among other parties</u>. Espinoza is not a party. Oxberry is not a party.

from Espinoza.

B. – No Withheld Communications

Plaintiff admits that Grant Meadows "produced emails from Espinoza's email account." However, apparently based on the number of emails it received (56), Plaintiff asserted without any documentary support that Grant Meadows is withholding Espinosa email documents. Grant Meadows is not withholding such documents and search all relevant time periods.

C. – No Withheld PJ Emails.

Grant Meadows has produced all PJ Jamea ("**PJ**") emails. As Plaintiff's exhibits demonstrate, [3] PJ's communications were not related to the subject contract or closing, but about the potential finance and development of the property after the subject property was potentially closed in his capacity through Oxberry.

D. – No Withheld Willson Cribbs Documents

Any Wilson Cribbs documents that might be discoverable are subject to the attorney-client communication privilege. Plaintiff contends in its reply in typically overstated conjecture: "Wilson Cribbs is the law firm that practically begged the title company to add a title exception on the eve of closing." If Plaintiff contends Wilson Cribbs' action caused a default or breach in the subject contract between Plaintiff and Grant Meadows, then Plaintiff could bring in Wilson Cribbs as a party, if it has a non-frivolous claim against them for actions in breach.

**2. Grant Meadows' objections are valid assertions of evidentiary deficiencies.**

Grant Meadows has raised what it contends are valid objections to the purported evidence

---

[3] The PJ emails have shown that he is included in his capacity as a member of Oxberry, not Grant Meadows. Not related to the potential purchase of the property.

that Plaintiff seeks to use with its Motion to obtain a sanction award. Grant Meadows sees a ruling on those objections, as well as the objection raised within this Sur-Reply.

Grant Meadows requests that the court deny any further award of sanctions at this time. [4]

**PRAYER**

Wherefore, premises considered, Defendant respectfully requests that the Court deny the 2nd Motion to Compel in full, and grant Defendant all other relief to which it may be entitled at law or in equity.

          **PORTER FIRM, PLLC**

          By: */s/J. Robert MacNaughton*
              J. Robert MacNaughton
              State Bar Texas No. 00789944
              SDTX Fed. ID. 18350
              robert@porterfirm.com
              2221 S. Voss Road, Suite 200
              Houston, Texas 77057
              Tel.: 713-621-0700
              Fax: 713-621-0709

          **ATTORNEYS FOR DEFENDANT**
          **GRANT MEADOWS, L.L.C.**

---

[4] Plaintiff has billed Grant Meadows $12,000 for the second deposition, which Grant Meadows is paying in compliance with the order after the first motion to compel. The second deposition did illicit and substantive issues in this case but essentially consisted of asking Mr. Jamea why he didn't originally produce documents that have now been produced. The time spent in the second deposition could have addressed the merits of the case, but did not.

OF COUNSEL:

PORTER FIRM, PLLC
Weston Prescott Ray
State Bar Texas No. 234098307
SDTX Fed ID. 3134994
westron@porterfirm.com
Brad E. Porter
State Bar Texas No. 24048741
brad@porterfirm.com
2221 S. Voss Road, Suite 200
Houston, Texas 77057
Tel.: 713-621-0700
Fax: 713-621-0709

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing pleading was served on all counsel of record on February 26, 2024.

Matthew Baumgartner
David King
Armbrust & Brown, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas 78701

                                        */s/J. Robert MacNaughton*
                                        J. Robert MacNaughton