IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KH REIT II FUNDING XXII, LLC, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:22-cv-03730 |
| | § | |
| GRANT MEADOWS, LLC, | § | |
|     *Defendant*. | § | |
| | § | |
| *and* | § | |
| | § | |
| FIDELITY NATIONAL TITLE | § | |
| INSURANCE COMPANY, | § | |
|     *Third-Party Interpleader*, | § | |
| | § | |
| v. | § | |
| | § | |
| KH REIT II FUNDING XXII, LLC, and | § | |
| GRANT MEADOWS, LLC, | § | |
|     *Third-Party Defendants*. | § | |

**GRANT MEADOWS, LLC's RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**PORTER FIRM, PLLC**

By: */s/J. Robert MacNaughton*
    J. Robert MacNaughton
    State Bar Texas No. 00789944
    SDTX Fed. ID. 18350
    robert@porterfirm.com
    2221 S. Voss Road, Suite 200
    Houston, Texas 77057
    Tel.: 713-621-0700
    Fax: 713-621-0709

**ATTORNEYS FOR DEFENDANTS**

**OF COUNSEL:**

PORTER FIRM, PLLC
Weston Prescott Ray
State Bar Texas No. 234098307

SDTX Fed ID. 3134994
westron@porterfirm.com
Brad E. Porter
State Bar Texas No. 24048741
brad@porterfirm.com
2221 S. Voss Road, Suite 200
Houston, Texas 77057
Tel.: 713-621-0700
Fax: 713-621-0709

# TABLE OF CONTENTS

I. Introduction and Summary of Argument. .................................................................................. 5
II. Statement of Facts. .................................................................................................................... 6
   A. The Purchase and Sale Agreement. ..................................................................................... 6
   B. The Title Commitment and Defendant's initial objection. .................................................. 7
   C. The neighbor's claims and Plaintiff's failure to disclose. .................................................... 8
   D. Amendments to the PSA. .................................................................................................... 9
   E. Title Company notified of Neighbor's claims for the first time ....................................... 10
III. Sequence of Events. ............................................................................................................... 12
IV. Argument. ............................................................................................................................... 13
   A. Plaintiff Failed to Prove that No Material Fact Issue Exists and Failed to Prove Each Element of Its Breach of Contract Claim as a Matter of Law .................................................... 13
     1. Grant Meadows lost the right to object to the power pole months before it terminated the PSA. ................................................................................................................................. 13
     2. Grant Meadows cannot use its own breach of contract as a basis for terminating the contract. ................................................................................................................................ 14
     3. Grant Meadows agreed in the First Amendment that removing or relocating the power pole was not a condition to closing. ....................................................................................... 15
     4. Grant Meadows waived almost all termination rights under the Second Amendment. . 15
     5. Grant Meadows was not required to deliver a Title Affidavit until closing. ................... 16
   B. Alternatively, the Contract is Ambiguous as a Matter of Law and Its Interpretation is a Question of Fact ......................................................................................................................... 16
V. Conclusion and Prayer ............................................................................................................. 17

# INDEX OF AUTHORITIES

**Statutes**

Federal Rule of Civil Procedure 56(a)

Federal Rule of Civil Procedure 56(c)(1)(B)

**Cases**

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)

*First Nat'l Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 28-90 (1968)

*Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.,* 334 F.3d 423, 431 (5th Cir. 2003)

*Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001)

*Southwestern Bell Tel., L.P. v. PUC,* 467 F.3d 418, 422 (5th Cir. 2006)

*Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014)

# GRANT MEADOWS, LLC's RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE KEITH P. ELLISON:

COMES NOW, GRANT MEADOWS, L.L.C. ("Grant Meadows" or "Defendant") and files this Defendant's Response to Plaintiff's Motion for Summary Judgment ("Motion") [Docket No. 37] filed by KH-REIT II FUNDING XXII, LLC ("KH REIT" or "Plaintiff"). In support, Defendant respectfully offers the following for consideration by the Court:

## SUMMARY OF RELIEF REQUESTED

Defendant requests that the Court enter an order denying Plaintiff's Motion for Summary Judgment (1) because Plaintiff has failed to establish each element of its breach of contract claim (2) and because material facts are at issue and are genuinely disputed by the parties.

### I. Introduction and Summary of Argument.

In its Motion, Plaintiff offers more argument than evidence to support its lone breach of contract cause of action against Defendant. In telling its tale of supposed breach, Plaintiff omits material facts that would properly place its case in a long line of motion for summary judgment casualties. This is because, as a matter of law, Plaintiff cannot show that it was capable of performance or tendering performance with respect to the Purchase and Sale Agreement ("PSA") dated March 31, 2022 for the sale of two tract of land (the "Property"), nor has it shown that Defendant was in breach. Moreover, Plaintiff breached the PSA beginning April 25, 2022 by failing to notify Fidelity National Title Insurance Company (the "Title Company") of unrecorded agreements and claims that may affect title to the Property.

Having failed in its proof, Plaintiff has inadvertently established (1) that its motion for summary judgment should be denied, (2) that it is not entitled to either the earnest money at issue

or any attorneys' fees related to a contract that Plaintiff breached, and (3) that Defendant should be declared the rightful possessor of said earnest monies.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) establishes that summary judgment is not proper in cases in which the nonmovant demonstrates that there are genuine disputes of material fact. FRCP 56(a); *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). Summary judgment should be rendered only if the pleadings, affidavits, and discovery and disclosure materials on file establish that there is no genuine issue as to any material fact, entitling the movant to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A non-movant may meet its burden to show that summary judgment is improper by affirmatively setting forth specific facts supporting its claims. *See First Nat'l Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 28-90 (1968). To show that the asserted facts are genuinely disputed, the nonmovant may show that the materials cited by the movant do not establish the absence of a genuine dispute. FRCP 56(c)(1)(B). In the case at bar and as more fully discussed below, the materials cited by Plaintiff in support of its motion for summary judgment simply do not establish such an absence of genuine dispute.

### II. Statement of Facts.
**A. The Purchase and Sale Agreement.**

On March 31, 2022, Plaintiff and Defendant entered into a PSA to purchase the Property.[1] Under the PSA, the Title Company was committed to issue a title insurance policy.[2] In order for the Title Company to issue the title policy, the Plaintiff was required to deliver an owner's title

---

[1] *See* Plaintiff's Exhibit 1. Defendant/Grant Meadows makes reference to certain Plaintiff's exhibits attached to or filed with their Motion. By each such reference, Grant Meadows admits and incorporates such exhibit as an exhibit herein, but specifically does not adopt or admit Plaintiff's Motion, Plaintiff's arguments, or Plaintiff's interpretation of such documents.
[2] *Id.* § 6(b)(ii).

affidavit ("Title Affidavit") in a form acceptable to Plaintiff and the Title Company.[3] The Plaintiff's delivery of the Title Affidavit is a condition of closing, without which the Defendant is excused from its obligation to close under the PSA.[4]

Plaintiff negotiated with the Title Company regarding the acceptable form of the Title Affidavit between March 29, 2022 April 5, 2022.[5] The agreed Title Affidavit, dated April 7th, 2022, required the following sworn statements from the Plaintiff:

> "3. To my actual knowledge, with no duty of investigation or inquiry Seller is not a party to any pending lawsuits in any State or Federal Court, and except for an alleged, untimely claim of mechanics' lien by Glumac that would have been extinguished by the foreclosure of Seller's deed of trust, as previously disclosed to the Title Company, I am not aware of any lawsuit which may be filed against Seller; nor has Seller been declared bankrupt or insolvent, voluntarily or involuntarily, in any court.
> […]
> 5. To my actual knowledge, with no duty of investigation or inquiry, there are no unrecorded and/or outstanding leases, contracts, options or agreements affecting the Property."[6]

**B. The Title Commitment and Defendant's initial objection.**

On April 21, 2022, the Title Company issued an updated title commitment.[7] The Title Company identified as an exception from coverage, an "[o]verhead power line running through center of the property with one power pole and Light [sic], and evidence of utilities servicing property. all located within adjacent public rights of way, without the benefit of recorded easements."[8] On April 22, 2022, Defendant sent Plaintiff a title objection letter raising the following objections:

> "Purchaser objects to the power line running through the center of Tract 2 and requires that it be relocated to a location determined by Purchaser and memorialized by a written easement, in a form approved by Purchaser.

---

[3] *Id.* § 5(c)(iv).
[4] *Id.* § 6(b)(iii).
[5] *See* Defendant's Exhibit 1.
[6] *See* Defendant's Exhibit 2.
[7] *See* Plaintiff's Exhibit 2.
[8] *Id.* at p. 9.

> Purchaser objects to the utilities located at the property without and easement and requires that each utility be memorialized by a written easement, in a form approved by Purchaser."[9]

While the Plaintiff alleges the title commitment exception and Defendant's title objection squarely address future claims of a neighboring property,[10] the explicit exception and objection refer to the lack of a recorded easements from the utility providers.[11] Nothing addresses claims of adjacent property owners, primarily because the Title Company has not been notified of any potential claims.

**C. The neighbor's claims and Plaintiff's failure to disclose.**

On April 25, 2022, Main 2601 Partners, LLC (the "Neighbor"), owner of a neighboring tract commonly known as 1000 McGowen St., sent Plaintiff a demand letter notifying them of several claims related to the Property and reserved any cause of action against the Plaintiff.[12] The Neighbor claimed the Plaintiff was bound by ongoing obligations of its predecessor-in-title, and identified a recorded agreement as well as unrecorded post-closing obligations related to electrical access.[13]

Although the Plaintiff received notice of an unrecorded agreement and potential litigation, the Plaintiff did not disclose these facts to the Title Company. The Title Affidavit, negotiated 18 days prior, requires disclosure of these exact issues.[14] The Title Affidavit does not condition or limit the sworn statements to issues the Plaintiff unilaterally deems to be meritorious, non-frivolous, viable, or fully adjudicated.[15]

---

[9] *See* Plaintiff's Exhibit 3.
[10] *See* Plaintiff's Motion, p. 4.
[11] *See* Plaintiff's Exhibits 2 and 3.
[12] *See* Plaintiff's Exhibit 8.
[13] *Id.*
[14] *See* Defendant's Exhibit 2.
[15] *Id.*

An argument that Plaintiff is allowed to withhold required disclosures from the Title Company until the day of closing is unconscionable, especially when the Plaintiff crafted an amendment to waive all of Defendant's termination rights related to title commitment exceptions in between the time it was notified of the neighbors claims and the closing date.[16]

Plaintiff goes to great lengths to establish that the Defendant was on notice of the Neighbor's claims, but the Defendant's knowledge is a separate issue from coverage under the title insurance policy. Defendant relied on Plaintiff's obligation to disclose these types of claims to the Title Company to ensure the Defendant would be adequately covered by its policy procured at closing.

**D. Amendments to the PSA.**

Plaintiff responded to Defendant's title objections on April 29, 2022 by electing not to cure the majority of the title exceptions, and notifying Defendant of the Title Affidavit accepted by the Title Company on April 7.[17] On May 3, 2022 the parties executed an amendment to the PSA ("First Amendment").[18]

Under the First Amendment, Plaintiff consented to Defendant's removal or relocation of the power pole.[19] If it was necessary for the Plaintiff to join in an application for removal or relocation, the Defendant would provide plans for removal or relocation of the power pole, together with consent from CenterPoint or the City of Houston, and proof of insurance.[20] CenterPoint did not require Defendant to create plans for removal or to provide insurance.

---

[16] *See* Plaintiff's Exhibit 13.
[17] *See* Plaintiff's Exhibit 4.
[18] *See* Plaintiff's Exhibit 5.
[19] *Id.*
[20] *Id.*

The First Amendment also states the power pole did not have to be removed or relocated as a condition to closing and that any permits would be assigned to the Defendant.[21] This provision was to allow removal or relocation after closing, not as a blanket waiver any claim hypothetically related to electrical utilities.

On June 29, 2022 the parties executed a second amendment to the PSA ("Second Amendment").[22] The Second Amendment set a new closing date of October 28, 2022.[23] Defendant also tendered the second deposit of $500,000. Plaintiff paints a narrative that Defendant's business prospects were already a sinking ship, yet Defendant chose this time to tender half a million dollars to continue with the transaction.

### E. Title Company notified of Neighbor's claims for the first time.

On September 30, 2022, the Title Company emailed the parties with an updated title commitment noting specifically that, "No new matters were found in the update."[24] The lack of new matters came as a surprise to the Defendant, given the fact that the Neighbor's claims arose in the interim between the last updated commitment. The Defendant notified the Title Company on October 11, 2022 of the Neighbor's claims.[25]

On October 17, 2022, the Title Company emailed the Plaintiff the following:

> "Has this been addressed with 2601 Main Partners? Is there an unrecorded contract or agreement? Is 2601 Main Partners threatening litigation?"[26]

It is clear from the email that this was the first the Title Company had ever heard regarding the Neighbor's claims.

---

[21] *Id.*
[22] *See* Plaintiff's Exhibit 13.
[23] *Id.*
[24] *See* Plaintiff's Exhibit 20, p. 2.
[25] *See* Defendant's Exhibit 3.
[26] *See* Defendant's Exhibit 4.

After receiving notice of the Neighbor's claims and conducting a site visit, the Title Company issued a revised title commitment on October 24, 2022, with a new distinct exception.[27] The new exception from coverage language provided,

> "Overhead power line running through the center of the property with two power poles and lights, apparently serving improvements on adjacent property, and all consequences of the existence, removal, and/or relocation thereof."[28]

The notice of the Neighbor's claim is the factual basis for the new commitment. The October 24 title commitment exception includes the first reference to utilities which may apparently serve adjacent property.[29] Given the fact that the pole was removed from the middle of the Property, it would be impossible for a visual inspection to reveal an apparent servicing of adjacent property. The reference to consequences of the existence and removal of the power poles stems from the Neighbors threats of litigation.

The exception in the April 21, 2022 commitment regarding the lack of utility easements on the Property is distinct from the consequences of the existence and removal of utilities apparently serving improvements on neighboring property.

In light of the new exception from coverage in the October 24, 2022 commitment, the Defendant sent Plaintiff a title objection letter on the same day.[30] The Plaintiff entirely rejected Defendant's authority to object to the exception.[31]

On October 26, 2022, Defendant terminated the PSA as a result of Plaintiff's refusal to cure exceptions to title and inability to provide a Title Affidavit at closing.[32]

---

[27] *See* Plaintiff's Exhibit 22.
[28] *Id.*
[29] *Id.*
[30] *See* Plaintiff's Exhibit 23.
[31] *See* Plaintiff's Exhibit 24.
[32] *See* Plaintiff's Exhibit 25.

### III. Sequence of Events.

- March 31, 2022 – PSA signed.

- April 7, 2022 – Plaintiff negotiated Title Affidavit

- April 21, 2022 – Revised title commitment (disclosing power pole without easement).

- April 22, 2022 – Defendant title objection notice.

- April 25, 2022 – Neighbor's notice of claims.

- April 29, 2022 – Plaintiff title objection response

- May 3, 2022 – First Amendment to PSA, consent to pole removal or relocation with easement.

- June 27, 2022 – 2nd Neighbor letter to Plaintiff regarding unrecorded agreement affecting Property and notice of claim.

- June 29, 2022 – 2nd Amendment to PSA and Defendant payment of $500,000.

- July 18, 2022 – 3rd Amendment to PSA regarding City of Houston Permitting.

- September 30, 2022 – Title Company email stating "no new matters found in the update."

- October 11, 2022 – Defendant letter notifying the Title Company of Neighbor's unrecorded agreement claim demands.

- October 17, 2022 – Title Company email to Plaintiff questioning Neighbor claims

- October 24, 2022 – Title Company revises commitment to address electrical service of adjacent property and consequences of pole removal

- October 24, 2022 – Defendant's title objection notice

- October 25, 2022 – Plaintiff rejection notice of Defendant objection letter

- October 26, 2022 – Defendant termination of PSA.

### IV. Argument.

#### A. Plaintiff Failed to Prove that No Material Fact Issue Exists and Failed to Prove Each Element of Its Breach of Contract Claim as a Matter of Law

The party moving for summary judgment on a claim has the burden of proving that no material fact issue exists and that each element of its claim has been established as a matter of law. Fed. R. Civ. P. 56(a); *See Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).

As Plaintiff's claims involve an alleged breach of contract, Plaintiff bears the burden of establishing each of the four elements of breach of contract. Plaintiff has not established as a matter of law that Defendants' conduct constitutes breach of the contract. Additionally, Plaintiff has failed establish it was capable of performing or tendering performance. As a result, Plaintiff cannot meet its burden of proof.

Plaintiff has focused its entire argument on the Defendant's alleged breach of the PSA by terminating without proper authority. In doing so, Plaintiff claims five reasons why Defendant's termination was improper.

#### 1. Grant Meadows lost the right to object to the power pole months before it terminated the PSA.

Plaintiff's first argument is predicated on the assertion that the April 21, 2022 title commitment exception[33] and the updated October 24, 2022 title commitment exception[34] are substantively identical. Logically, if this were true, there would not have been a need for the updated title commitment in October because the language in the April exception would have excluded the same matters from coverage.

---

[33] *See* Plaintiff's Exhibit 2.
[34] *See* Plaintiff's Exhibit 22.

The exception in the April 21, 2022 commitment regarding the lack of utility easements on the Property is distinct from the consequences of the existence and removal of utilities apparently serving improvements on neighboring property. The October commitment exception relates to the Neighbor's claims, which were raised for the first time. For this reason, Defendant had not lost its right to object to the "Overhead power line running through the center of the property with two power poles and lights, apparently serving improvements on adjacent property, and all consequences of the existence, removal, and/or relocation thereof."[35]

**2. Grant Meadows cannot use its own breach of contract as a basis for terminating the contract.**

Plaintiff incorrectly states the only reason the title company revised the title commitment was because Defendant caused the power pole to be removed by CenterPoint. As addressed above, the notification of the Neighbor's claims prompted the revised title commitment.[36]

Defendant refutes that it was in breach of the First Amendment based on the express consent of the Plaintiff for removal of the pole. CenterPoint drafted its own plans for removal of the pole and did not require any insurance. Additionally, the Neighbor's claims demanded relocation of electricity access, so their claims remained whether the pole was removed or remained in place.[37]

---

[35] *Id.*
[36] *See* Defendant's Exhibit 4.
[37] *See* Plaintiff's Exhibit 8.

3. **Grant Meadows agreed in the First Amendment that removing or relocating the power pole was not a condition to closing.**

As addressed above, this argument assumes the two exceptions regarding the power pole without an easement and the subsequent claims of the Neighbor to be the same. They are not the same.

The First Amendment also states the power pole did not have to be removed or relocated as a condition to closing and that any permits would be assigned to the Defendant.[38] This provision was to allow removal or relocation after closing, not as a waiver of the Neighbor's claims or any other claim related to utility access.

4. **Grant Meadows waived almost all termination rights under the Second Amendment.**

The Plaintiff was required to notify the Title Company of the Neighbor's claims in April of 2022 when they were first raised. If so, a new title commitment could have been issued and each parties rights in response to the exceptions could have been exercised. As a result of Plaintiff's refusal to disclose the Neighbor's claims, Defendant's rights under the PSA to object or terminate were never available.

Then, the Plaintiff crafted an amendment to waive all of Defendant's termination rights related to title commitment exceptions in between the time Plaintiff was notified of the neighbors claims and the closing date.[39] Enforcement of the Second Amendments termination waiver after Plaintiff failing to disclose the Neighbor's claims would be a gross miscarriage of justice.

---

[38] *See* Plaintiff's Exhibit 5.
[39] *See* Plaintiff's Exhibit 13.

Additionally, Plaintiff was in default under the PSA for failing to disclose the Neighbor's claim to the Title Company, which is a valid basis for termination under the Second Amendment.[40]

   5. **Grant Meadows was not required to deliver a Title Affidavit until closing.**

While Plaintiff is correct that under the PSA the Plaintiff could tender the Title Affidavit at closing, Plaintiff could not truthfully execute the agreed Title Affidavit due to its failure to disclose the Neighbor's claims. As such Plaintiff was not capable of performance or tendering performance by executing the Title Affidavit prior to or at closing.

   B. **Alternatively, the Contract is Ambiguous as a Matter of Law and Its Interpretation is a Question of Fact**

Alternatively, the terms of the contract are subject to two or more reasonable interpretations, making the contract ambiguous and creating a fact issue as to the parties' intent. "Whether a contract is ambiguous is a question of law for the court to decide…." *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.,* 334 F.3d 423, 431 (5th Cir. 2003).

If a contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, then the contract is ambiguous, which creates a fact issue on the parties' intent. To determine whether a contract contains an ambiguity, the court must consider the contract as a whole in light of the circumstances present when the parties entered the contract. *Southwestern Bell Tel., L.P. v. PUC*, 467 F.3d 418, 422 (5th Cir. 2006). In the case at bar, the question of closing conditions and termination rights under the First and Second Amendments have different interpretations by each party. A fact issue exists at to the intent of the parties and therefore summary judgment is not appropriate.

---

[40] *Id.*

**V. Conclusion and Prayer**

For these reasons, GRANT MEADOWS, L.L.C. requests that the Court deny Plaintiff's Motion for Summary Judgment and grant to Defendant all other relief to which they may be entitled at law or in equity.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was served on all counsel of record on February 27, 2024.

By: */s/J. Robert MacNaughton*
J. Robert MacNaughton